J. W. SPARKS v. OKLAHOMA CONSTRUCTION COMPANY, a Corporation.

(Filed September 4, 1907.)

(91 Pac. 839.)

1.  **BILLS AND NOTES—Action—Pleading—Public Policy—Railroad Bonus.** A petition praying for judgment upon a promissory note containing a provision showing that it was executed in consideration of the benefits arising to the maker by reason of the construction of a railroad from a given place to another place named, by a time stated, and which is made payable to a construction company, without naming the railroad to be built, or any railroad company as an interested party, does not present such a question of public policy as to make such petition demurrable upon that ground.

2.  **SAME—Answer—Burden of Proof.** Where, in an action upon a promissory note which sets forth as the consideration thereof the construction of a railroad to a given point by a given time, an answer is filed setting up a distinct contract providing for the conveyance of real estate as the consideration for the execution and delivery of said note, and where the reply to such answer denies under oath the execution and delivery of such contract, the burden of proving the execution and delivery thereof is upon the defendant, and a failure to prove the execution and delivery of such contract precludes its being received in evidence, and is a failure of that ground of defense.

(Syllabus by the Court.)

*Error from the District Court of Woods County; before J. L. Pancoast, Trial Judge.*

*Snoddy & Son,* for plaintiff in error.

*Dale & Bierer,* for defendant in error.

Opinion of the court by

GILLETTE, J.: This action was begun in the district court of Woods county, June 30, 1904, by defendant in error to recover from the plaintiff in error upon two promissory notes aggregating the sum of $100, the first of which is Exhibit A to the petition, and reads as follows:

"No. 140      $25.00      Enid, O. T., April 13, 1901.

"On or before September 1, 1901, for value received, I promise to pay to the Oklahoma Construction Co., or order, the sum of $25.00, with interest from maturity at the rate of ten per cent. per annum. This note is made in consideration of the benefits accruing to me from the construction and operation of a railroad from the town of Blackwell, O. T., to and into the town of—— located upon the —— quarter of section 32, in township 21 north, of range 9 W. I. M., and the erection of a depot and yard facilities thereat.                                                    —

"Now, if said railroad is built and in operation on or before the first day of August, 1901, this note shall be in full force and effect, but if said railroad is not built as above provided, this note shall be null and void. And to secure the payment hereof I hereby give and grant to the Oklahoma Construction Company, or its assigns, a lien upon an undivided interest to one red and white cow, 8 years old, now situated upon the southeast quarter of section 34, town 21, range 9 W. I. M., equal to —— bushels of——.

"J. W. SPARKS.

"In the presence of C. C. Arel."

The second note for $75 was of like tenor and effect, dated at Enid, O. T., May 6, 1901, and designated the town of Hoyle, located upon the southwest quarter of section 32, town 21 north, of range 9 W. I. M., as the point to which said road was to be built by Aug. 1, 1901. The answer filed, after a demurrer to the petition had been overruled, was first a general denial of the alle-

gations of the petition, except such allegations as were expressly admitted, but denied that the railroad was built and in operation as required by the terms of the note, and alleged that there was no depot erected or yard facilities provided on said quarter section of land the first day of August, 1901. The defendant, further answering, stated that the notes were based upon an illegal agreement and contract, in that, in addition to the location of the depot and yard facilities at the point mentioned, there was an agreement by which the plaintiff agreed to deliver to the defendant deeds conveying three lots in Ames, Woods county, Oklahoma, which were to be determined by lot or drawing therefor, which agreement was as follows:

"Enid, O. T., 4-26, 1901.

"In consideration of the execution and delivery of a certain promissory note made by J. W. Sparks and payable September 1, 1901, to the Oklahoma Construction Company, or order, and conditioned for the construction of a certain line of railroad mentioned in the written condition to said promissory note annexed, said Oklahoma Construction Company hereby certifies that said J. W. Sparks is entitled to receive a good and sufficient deed of conveyance to three lots in the town of Ames, Woods county, Oklahoma, conveying to said J. W. Sparks good title to such lot free and clear of all lien or incumbrance, the location of said lot in said town to be determined by lot or drawing therefor, between all parties entitled thereto. And said Oklahoma Construction Company hereby guarantee the due execution and delivery of such deed of conveyance upon the determination by lot as aforesaid, and the payment of said promissory note.

"THE OKLAHOMA CONSTRUCTION COMPANY,

"By T. S. CHAMBERS, its agent."

A second contract of like tenor and effect was executed and delivered May 31, 1901, for one lot. The answer further alleged that there was more than 1,000 lots in the town of Ames of the value of from $1 to $300, and that defendant had demanded before suit was brought a deed conveying a lot in the town of Ames, which was refused. The defendant, for a further defense, declared the plaintiff to be the owner of the land platted as a town

site, and through its officers informed the defendant that, unless it could sell four hundred lots in said town site, no depot or yard facilities would be located there, and the defendant, being desirous of having such depot and yard facilities there, executed and delivered to the plaintiff said notes, for which he was to receive four lots in consideration of his notes, and which had never been tendered or offered to him, and conveyance of the same had been refused. In reply, the plaintiff denied the allegations of the defendant's answer which in any way denied the plaintiff's right of recovery, and, for a further reply, denied the authority of T. S. Chambers, as agent of the plaintiff, to make and deliver on behalf of the plaintiff the contract to convey lots, and denied that Chambers was an agent of the plaintiff, which denial was verified by the president of the plaintiff. Upon the issue so framed the case was tried June 1, 1905.

The first assignment of error presented by the brief of plaintiff in error is the overruling, by the trial court, of the demurrer to the petition and objections to the introduction of testimony, citing, in support of such contention, *Enid Right of Way and Town Site Co. v. Lyle,* 15 Okla. 318, 82 Pac. 810. *McGuffin v. Coyle and 'Guss,* 16 Okla. 648, 85 Pac. 954, 86 Pac. 962; and *Piper v. Choctaw Northern Town Site and Improvement Co.,* 16 Okla. 436, 85 Pac. 965. The plaintiff in error in his brief says: "The petition shows affirmatively that the instruments sued on were illegal contracts, and that they were void, being against public policy. They showed that the promise to pay was made, not to the railroad company, but to a third party." There is nothing in the petition which justifies this statement. The notes sued on were plain promissory notes, payable to the defendant in error, and recite a particular consideration therefor, which was the building of a railroad by the defendant in error as stipulated, and the petition averred full compliance with such consideration. There was no third party mentioned. There was no railroad named to be influenced. There is nothing in the petition or contract which

shows that any particular railroad company or official was to be or might be influenced by it. It was simply a contract to pay so much money when a certain thing was done, and the petition averred a full compliance with the terms of the agreement. To have held the demurrer good it would have been necessary for the court to have read into the petition and contract sued on what was not there written, and which could not be legally presented in considering the demurrer. The authorities cited are not applicable. In *Enid Right of Way and Town Site Company v. Lyle*, the company agreed, in consideration of $75 to secure the location of a depot on the line of the Denver, Enid & Gulf Railroad at a point named, which amount was to be due and payable to the company when its road was constructed to the point named. In *McGuffin v. Coyle & Guss,* McGuffin contracted to pay Coyle & Guss in consideration of the Atchison, Topeka & Santa Fe Railroad building a line of railroad to Cushing, Okla., by a time fixed; while in *Piper v. Choctaw Northern Town Site & Improvement Co.,* the contract was with the Watonga & Northwestern Railroad Co., and was given as a matter of inducement to the building of that company's line of road to Watonga. In this last-named case, the contract was held valid and enforceable. In the other two cases, the contracts were held invalid and not enforceable. In the case under consideration the contract was executed and made payable, as stated, in consideration of benefits to be derived by plaintiff in error from the construction of a line of railroad and the location of a depot and yard facilities at a point named, and was not therefore a contract in consideration of some third party doing the thing contracted to be done; nor was any third party by the terms of the contract to be influenced to do the thing desired. There was no room therefore in the allegations of the contract or petition for the court, upon considering the demurrer, to conclude that the contract was void upon the ground of being against public policy. If it was void for such reason, it would be necessary to show sufficient fact to that end by answer. The

line of road to be built was from Blackwell, Okla., to Hoyle, Okla. The ownership of the road is not disclosed by the contract sued on, if there was an owner of the same at the time, and the contract by its terms and tenor appears to be simply an inducement to such construction. This was the controlling consideration of the court in the case of *Piper v. Choctaw Northern Town Site and Improvement Co., supra,* wherein an obligation to pay $250 was held to be payable to the company building the road; such sum having been offered as an inducement to build the line of road by a time specified to a point designated. The demurrer having been overruled, as we think, correctly, the defendant answered as hereinbefore stated. No question of the non-enforceable character of the instrument sued on, upon the ground of public policy, was presented by the answer.

To a more complete understanding of the questions the trial court had before it to consider in the trial of the cause and upon the introduction of the testimony, we will recapitulate the defenses set up in the answer of defendant to the contracts sued upon. The execution and delivery of the contract was admitted, but it was alleged that the railroad was not buit or in operation August 1, 1901, and that no depot and yard facilities had been established at the point required by the contract. This was the only defense stated in the answer touching the particular provisions of the contract sued on.

A second and further defense was pleaded based upon a separate contract purporting to have been given by the construction company to defendant, which by its terms provided for the execution and delivery to defendant of four lots in the town of Ames, Okla., (a changed name for Hoyle), to be selected by lottery, which deeds, it was alleged, had never been executed, and execution of them upon demand therefor had been refused. Touching the direct defense stated, that the railroad was not built with depot and yard facilities on August 1, there was presented simply a question of fact, to which much testimony was addressed and

from which it appears that the road was constructed to the point required on the day required, and much evidence was offered upon the question as to whether or not a depot and yard facilities was on that day provided at that point. On behalf of the plaintiff, it was contended that a temporary depot was, at the time, provided, and that the plaintiff was at that time ready with depot facilities to discharge the business incident to the operation of a line of railroad, and that an agent had been supplied for that purpose. The conflicting testimony in this respect was settled by the general finding of the court that the road was constructed and in operation at the time and place required by the contract. A more perfect construction would, no doubt, follow with the lapse of time and necessity therefor; but that the road was constructed and fixed permanently at that point at that time there can be no question, and this propably was the only requirement of the contract, although it is specified in the contract, as a part of the consideration therefor, that a depot and yard facilities should be built, but the date upon which the depot and yard facilities should be built is not specified. Touching the second ground of defense, to-wit, the conveyance of lots, it is shown that two contracts were executed; the first for three lots, thirteen days after the execution of the first contract sued on, and the second for one lot twenty-five days after the second note sued on was executed. In fact, the dates of the instruments themselves show this to be true. As to the date of the delivery of the instrument sued on and the delivery of the instrument set out in the answer, or whether or not there was a simultaneous delivery of each of such instruments, the record is silent. Numerous questions were asked tending to develop this fact, but under the rule of the court such questions were not answered. Exceptions were taken to the ruling of the court in this respect. The order of the court was based upon the fact that the instruments sued on were each a complete contract requiring no explanation because of ambiguity, and expressed a consideration moving therefor. It is true that a written instru-

ment may be varied by an instrument in writing or by an executed parol agreement. Here it was sought to vary a written agreement by an instrument in writing, to wit, Exhibits A and B, to the answer. The execution and delivery of these instruments were not admitted; in fact, their execution and delivery by plaintiff were denied under oath in the reply to the answer, as well as the author·ity of the person purporting to have executed the same. This status placed the burden upon the defendant to show that the written instruments presented by the answer were obligations of· the plaintiff, and, until such fact was established, they could not, under the denial of the reply, be received in evidence or brought forward as contracts varying the terms of the written instrument sued on, and the rule of the court excluding them and any evidence touching their terms and tenor, until authority for their execution was shown, was correct.

No attempt was made to show that such instruments were executed or delivered by authority of the plaintiff, or to show that one T. S. Chambers, by whom they were signed, was either an officer or agent of the plaintiff, or had power or authority to execute or deliver the same. This lack of necessary evidence on behalf of the defendant to bring the instrument relied upon before the court for consideration was sufficient to exclude the same as evidence or proof of their contents. With such failure of proof on behalf of defendant, the entire ground of defense based upon such instruments was lost to the defendant, which left his defense standing alone upon the proposition that the road was not constructed in time and in accordance with the instrument sued on, and, as we have observed, such issue of fact was determined by the trial court upon conflicting testimony, which under the rule of this court cannot be disturbed.

The judgment of the court below must therefore be affirmed, with costs.

Pancoast, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.