RACINE COUNTY BANK VS. AYERS.

A subscription for stock of a railroad company is not invalid merely because it is conditional, if the condition itself is not of such a character as to make the agreement void on the ground of public policy.

Such a subscription is not invalid because made payable upon condition of the location of a depot of the road in a particular part of a town through which the road is to pass.

Such a subscription is not invalid because it contains a stipulation on the part of the company that the amount paid thereon shall bear interest until dividends shall be declared from the earnings of the road.

A subscription for railroad stock made on the 5th of July, 1855, contained a stipulation that the subscriber might forfeit his stock after paying one-third of the amount subscribed, *provided notice of his intention to forfeit should be given to the company prior to the 1st of July, 1855. Held,* that such notice being impossible, the condition really never existed.

Where a contract is made with a corporation by a wrong name, a suit may be maintained thereon by an assignee of the contract, the complaint alleging that the contract was made with the corporation by such wrong name.

A railroad company may assign a stock subscription, or the amount due or to become due thereon.

ERROR to the Circuit Court for *Racine* County.

This action was brought to recover the amount of a railroad stock subscription. The complaint alleged that "The Racine, Janesville & Mississippi Railroad Company" was incorporated by an act approved April 7, 1852; that its name was changed to "The Racine & Mississippi Railroad Company" by an act approved March 31, 1855; that on the 5th of July, 1855, said Racine & Mississippi Railroad Company had divers shares of its stock to sell, and on that day the defendant

agreed with said company, by the name of "The Racine, Janesville & Mississippi Railroad Company," to purchase ten shares of said stock, upon the terms stated in the following agreement: "We severally agree to take the number of shares set opposite our names respectively, in the capital stock of the Racine, Janesville & Mississippi Railroad Company, and to pay therefor $100 for each share of stock, in such sums and at such times as the board of directors of said company may from time to time direct; provided, 1. That not more than one-fourth of the amount subscribed shall be called for before the 1st of July, 1856, nor more than three-fourths before the 1st of July, 1858. 2. That each subscriber shall have the privilege of forfeiting the stock by him subscribed, and being released from any further payment thereon, after having paid one-third of the amount thereof; provided, that previous to the 1st day of July, 1855, he shall give written notice to the company of his intention to forfeit. It is further stipulated, that the amount paid on the stock hereby subscribed, shall bear interest at 10 per cent. per annum, until dividends shall be declared from the earnings of said road, provided the installments are paid when called for as aforesaid; provided, that the depot in Burlington on said railroad is located by said company not further east than the east line of lands owned by Joseph Fey in said town of Burlington." The complaint alleged that said Racine & Mississippi Railroad Company accepted and ratified said agreement, and entered the name of the defendant on its books as a subscriber for ten shares of its capital stock, and had ever since held, and still held, said ten shares ready for the defendant upon his making payment therefor; that said company, before the 2d of November, 1855, located their depot at Burlington, west of the east line of the land of Joseph Fey, in said agreement referred to; that various calls had been made by said board of directors, for the payment of installments upon said stock, under which the whole sum subscribed by the defendant had become due and payable; that the defendant had never paid one-third of the sum so subscribed by him, or forfeited his said stock, or given any notice to said company of his intention to forfeit it; that said Racine

& Mississippi Railroad Company, on the 27th of July, 1858, for a valuable consideration, made a written assignment of said subscription, and of all moneys due, or to grow due thereon, to one Isaac Taylor, of which the defendant had due notice; and that, on the 9th of June, 1859, said Taylor, for a valuable consideration, assigned said subscription to the plaintiff, which is a body corporate under the banking law of this state.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and specified the following objections: "1. The agreement set forth in said complaint does not purport to be entered into with the Racine and Mississippi Railroad Co., nor is it stated that the same was drawn by mistake, mis-reciting the name of the railroad company. 2. The said pretended agreement was to take shares in the capital stock of the Racine, Janesville and Mississippi Railroad Co., where-as, on the day said agreement was alleged to have been ex-ecuted, there was no such corporation, nor any incorporated company authorized to build a road which should touch Ra-cine, Janesville, and the Mississippi river, and therefore the contract was void for uncertainty. 3. The said agreement was one which the Racine and Mississippi Railroad Company had no right to make. (1). Because it was an agreement to sell shares of its capital stock for a certain price, and not a sub-scription to its capital stock. (2). Because it stipulated that the subscription should be called for in a manner not pro-vided by law, and was a fraud upon cash-paying stockholders. (3). Because the company could not agree to let a stockholder forfeit his stock, without full payment therefor, and such a subscription was contrary to the charter of said company. (4). Because it stipulated for the payment of interest, con-trary to the terms of the company's charter. (5). Because the company had no right to accept a subscription condi-tioned upon any future location of its depot at Burlington. 4. It is not alleged in the complaint that any shares of the capital stock of any railroad company were tendered to the defendant before action brought.

Judgment for the defendant on the demurrer.

June Term,
1860.

RACINE COUN-
TY BANK
V.
AYERS.

*Cary & Pratt*, for plaintiff in error:

1. A party may contract in such name as he pleases, but a suit to enforce such contract must be in his proper name, and when it satisfactorily appears that it is his contract, he can recover. *Templeton vs. Craw*, 5 Greenl., 417; *N. Y. Afr. Soc. vs. Varick*, 13 Johns., 38; *Medway Cotton Man. vs. Adams*, 10 Mass., 360; *Pres., Managers &c. vs. Myers*, 6 Serg. & Rawle, 12; Ang. & Ames on Corp., § 234. 2. The agreement sued upon is one that the railroad company had a right to make. (1). It was competent for the company to agree that any subscriber might forfeit his stock after paying one-third of the amount thereof. Its forfeiture when partly paid for was beneficial to the company. Such a stipulation, therefore, could not work a fraud upon any one. *New Bedford and Bridgewater T. Co., vs. Adams*, 8 Mass., 138. But in this case the defendant could avail himself of this pretended condition only by giving notice in writing of his intention to do so, before the 1st of July, 1855, a day prior to the date of the agreement. The condition therefore did not exist. *Merrill vs. Bell*, 6 Smedes & Marsh., 730; *Hughes vs. Edwards*, 9 Wheat., 489, 493–4. (2). The company was at liberty to allow interest on money paid on stock, from the time of its payment. (3). The condition in regard to the location of the depot at Burlington is one which the company was at liberty to make, in receiving a subscription, after it was fully organized. In some cases in New York such subscriptions have been held to be contrary to public policy; but in this position the courts of that state stand alone. *Cumberland Valley R. R. Co. vs. Baab*, 9 Watts, 458; *Rhey vs. Ev. & S. Pl. R. Co.*, 27 Penn. St., 261; *McMillan vs. M. & L. R. R. Co.*, 15 B. Mon., 218; *H. & N. R. R. Co. vs. Leavell*, 16 B. Mon., 358; *Chapman vs. Mad R. & L. Erie R. R. Co.*, 6 Ohio St., 118; *Carlisle vs. Terre Haute & Richmond R. R. Co.*, 6 Ind., 316; *Fisher vs. E. & C. R. R. Co.*, 7 id., 407; *Central T. Co. vs. Valentine*, 10 Pick., 142; *Troy & Greenfield R. R. Co. vs. Newton*, 1 Gray, 544; *N. H. Central R. R. vs. Johnson*, 10 Foster, 401; Pierce on Am. R. R. Law, 70, 71. 3. The conditions were all for the protection of the defendant, and if any of them were void or contrary to public

policy, it would avoid the condition and dispense with its performance, leaving the obligation of the stock subscriber in full force. *Henry vs. V. & A. R. R. Co.*, 17 Ohio, 187. 4. It was not proper for the company to deliver the stock to the defendant before payment in full of his subscription. He could at any time compel a delivery by such payment.

*C. E. Dyer* and *Mat. H. Carpenter*, for defendant in error:

1. Delivery of the shares of stock subscribed for and payment therefor, are, by this contract, made concurrent acts. There ought therefore to have been averred in the complaint a tender of such shares before action brought. *Dana vs. King*, 2 Pick., 156; *Lester vs. Jewett*, 12 Barb. (S. C.), 502; *Same Case*, 1 Kern., 453; *Bank of Columbia vs. Hagner*, 1 Peters, 455. 2. The company had no power to enter into the agreement upon which suit is brought. The powers of corporations must be strictly construed. 2 Cranch, 127; 4 id., 542; 2 Kent's Comm., 298; *Beatty vs. Marine Ins. Co.*, 2 John., 109; *People vs. Utica Ins. Co.*, 15 id.. 358; 7 Wis., 59. Counsel insisted on the several objections to the agreement, which were specified in the demurrer, citing in support of the objection that it was an agreement for the *sale* of, and not a *subscription* to, the capital stock of the company, secs. 1 and 2 of its charter, and *Troy & Boston R. R. Co. vs. Tibbits*, 18 Barb. (S. C.), 297; to the point that the company could not stipulate for a forfeiture of the stock at the will of the subscriber after payment of one-third of the amount thereof, *Slee vs. Bloom*, 19 John., 456; to the point that the company could not stipulate with any stock subscriber for the payment of interest on the amount paid in upon his stock, without a fraud upon the other stockholders, *Troy & B. R. R. Co. vs. Tibbits, supra; Wood vs. Dummer*, 3 Mason, 308; Redfield on Railways, pp. 99, 597; and to the point that the company could not take a subscription conditioned upon any future location of its depot at Burlington, *Butternuts & Oxford R. R. Co. vs. North*, 1 Hill, 518; *M. & B. Pl. R. Co. vs. Snediker*, 18 Barb., 317; *Fort Edward & Ft. Miller Pl. R. Co. vs. Payne*, 1 Smith, 583; *Fuller vs. Dame*, 18 Pick., 472.

*By the Court*, PAINE, J.   Most of the questions presented in this case have already been determined by this court. The validity of conditional stock subscriptions, was assumed by the court in the case of *The Fox River Valley Railroad Co. vs. Shoyer*, 7 Wis., 365; and it was expressly sustained in the case of *The Milwaukee and N. I. R. R. Co. vs. Field*, argued at the last term.  Undoubtedly there might be a condition annexed to such a subscription, which, from its peculiar character, might make the agreement void, as against public policy.   But if the condition itself has no such character, the mere fact that there is a condition, does not invalidate the agreement.   It is true, that in New York it has been held that a subscription, conditioned upon a certain location of the road, is void, as against public policy; it being supposed to introduce motives of private interest to control the location, instead of leaving it to be determined as public convenience might require.   But this doctrine has not been adopted in other states.   On the contrary, their courts have held such subscriptions valid.   See Pierce on Am. R. R. Law, pp. 70, 71, and cases there cited.   And after carefully considering the question, we are of the opinion that those courts have taken a correct view of the law.   The charters of these companies impose such restrictions and requirements upon them as, in the opinion of the legislature, the public interest and public policy demand.   And it having done so, it must be assumed that within these limits the company is left to accomplish the enterprise as best it may.   And the mere fact that in some agreement it may appear that motives of private interest, may, to some extent, operate in influencing its action, ought not to be held to make such agreement void, as against public policy.   It is vain to suppose that such enterprises can be accomplished without the operation of such motives. They constitute the mainspring of human action, and must inevitably operate to a greater or less extent, in the execution of all great enterprises of this character, and we think it may be safely assumed that so long as the company complies with the requirements of the charter, the struggle between conflicting private and local interests will, from the

June Term,
1860.

RACINE COUNTY BANK
v.
AYERS.

October 15.

necessity of the case, be so adjusted as best to advance the enterprise and accommodate the public generally.

The power of the company to contract for the payment of interest on advance payments for stock, was also sustained in the case of *R. R. Co. vs. Field;* and the assignability of stock subscriptions, in the cases of *Downie vs. Hoover, Downie vs. Page* and *Downie vs White,* at the last term.

The only other points presented here are the following: It is said that this agreement does not purport to be made with the Racine & Mississippi R. R. Co., and that there is no allegation of any mistake, and that therefore this action cannot be sustained. This objection might be good, if it could be assumed that the Racine & Mississippi R. R. Co. was one corporation, and the Racine, Janesville & Mississippi R. R. Co. another. But this, in view of the allegations in the complaint, cannot be assumed. On the contrary, the complaint expressly avers that the name of the corporation was changed from the latter to the former, at about the time of making this agreement, and that it was made with this corporation by its old name. If this allegation was true, the misnomer would not defeat an action on the contract. *Templeton vs. Craw,* 5 Greenl., 417; 13 John., 38; 10 Mass., 360; 6 Serg. & Rawle, 12; Ang. & Ames on Corp., § 234.

The question whether it was competent for the company to agree that the subscriber might forfeit his stock, after paying one-third, does not seem to be fairly presented on this demurrer. For the agreement is dated on the 5th of July, 1855, and by its terms he was required, in order to avail himself of that condition, to give notice previous to the 1st of July, 1855, of his intention to forfeit. This was impossible, and the condition, therefore, never really existed. *Merrill vs. Bell,* 6 Smedes & Marsh., 730; *Hughes vs. Edwards,* 9 Wheat., 493–4.

The judgment must be reversed, with costs, and the cause remanded for further proceedings.