W. B. Piper v. Choctaw Northern Townsite and Improvement Company, *a corporation.*

(Filed February 14, 1906.)

1. ACTION ON CONTRACT—Petition not Demurrable, When. Where the conditions of a contract are such as to provide for the maintenance of the thing contracted for after construction, a petition in an action brought upon a contract to recover the consideration for such contract, is not demurrable for the reason that the petition states that the contract has been and is being performed, the words, "is being performed," having reference to the maintenance of the thing contracted for.

2. CONTRACT WITH THE RAILROAD COMPANY—Conditioned upon Construction of Road—Enforceable, When. A railroad company for the purpose of aiding in the construction of its line of road, may accept and enforce an obligation payable to it conditioned upon the construction of its line of road to a given point within a given time, and the establishment and maintenance of a depot there.

3. SAME—Enforceable when Charter and Name are Changed. A contract was given to the Watonga and Northwestern Ry. Co. promising payment of $250.00 to it if a line of railroad should be built from Geary O. T. to Watonga O. T., by June 1, 1901, and a depot established and maintained there. The charter of said railroad company was afterwards amended changing the name of the corporation to The Choctaw Northern Ry. Co., under which last name the line of road provided for in the contract was constructed. Held, that a demurrer to the evidence for that reason was properly overruled.

4. AMENDMENT OF ANSWER—During Trial—Discretionary with Court. It is not an abuse of discretion for a trial court during the trial of a cause, to refuse an amendment to an answer, which sets up a new and additional defense, where no reason is given therefor other than that the trial court refused to allow the evidence desired to be introduced under a general denial.

(Syllabus by the Court.)

*Error from the District Court of Blaine County; before J. L. Pancoast, Trial Judge.*

*Noffsinger & Hinch,* for plaintiff in error.

*J. B. Cheadle,* for defendant in error.

Opinion of the court by

GILLETTE, J.: This action is brought to enforce performance and payment of the following contract:

### "CONTRACT.

"As a matter of inducement for the purpose of securing a railroad and aiding in the construction of the same, said railroad to be constructed from at or near Geary, Blaine county, Oklahoma Territory, to the town of Watonga, Blaine county, Oklahoma, I do hereby promise to pay to the Watonga and Northwestern Railroad Company, its successors or assigns, the sum of two hundred and fifty dollars, as follows, to-wit: One hundred and twenty-five dollars to be paid on or before October 1, 1901, and one hundred and twenty-five dollars to be paid on or before January 1, 1902; upon the condition that said railroad shall be constructed and in operation to said Watonga by June 1, 1901, and upon the further condition that said railroad shall establish and maintain a station within 450 feet of main street as at present located in said Watonga.

"And I do hereby agree that no representations by any one other than the representations made herein shall be binding on the said company.

"This contract is entered into for and in consideration of the said railroad's being constructed as aforesaid.

"Witness my hand on this 11th day of February, 1901.

"W. B. PIPER."

Endorsed on contract:

"Pay to the order of

"Choctaw Northern Townsite  and Improvement Company.

"Choctaw Northern Railroad Company,

"by J. W. McLeod."

Upon the trial of the cause it was disclosed by the evidence that the railroad was built and put in operation as contemplated by the contract, and  the station  established at Watonga as provided for by the foregoing agreement.  In short it is not claimed by the defense offered in the case but that the provisions of the contract to be performed by the railroad company had been fully and literally complied with.

The defense offered was purely technical, and raised no issue upon the merits of the case.  This is a character of defense not greatly favored by appellate courts, but the strict legal rights of the party will nevertheless be protected.

The first objection urged is that the trial court erred in overruling the defendant's demurrer to plaintiff's amended petition, and this for the reason that it averred the railroad mentioned in the contract was in process of construction at the time the contract was executed, and therefrom infers a variance between the contract and the averments of the petition.  We find nothing in the contract which determines whether the railroad was then in process of construction or was not.  Neither are we  able to  see how the defendant could be injured by the fact that the railroad, which he undertakes to aid in the construction of, was already in process of building.

A second proposition presented upon the demurrer is that the petition recites that the condition of the contract

sued on "has been and is being performed." It is urged that this is not an allegation of perfect performance of the contract, citing the provisions of the Oklahoma statute as follows:

"In pleading the performance of the conditions precedent in a contract, it shall be sufficient to state that the party duly performed all of the conditions upon his part."

The language of this statute is not, as argued by counsel for plaintiff in error, equivalent to a provision that an action cannot be maintained upon a contract except upon an allegation that all the conditions of the contract have been performed by the party pleading. The statute provides simply what is a sufficient allegation of the facts. It is unreasonable to suppose that this language of the statute was intended to preclude other conditions which entitled the party to recover, that those of complete performance of the contract, and in the contract under consideration there is an apt illustration, for the contract provides among other things, as a condition to liability thereon 'that said railroad company shall establish and maintain a station within 450 feet of Main street, as at present located in the said city of Watonga."

The words establish and maintain mean that a depot shall be established and thereafter maintained. The word "maintained" as therein used means a continuing obligation, and the pleader manifestly, by the language used, intended to declare that all the conditions have been performed by the railroad company and the language used "and is being performed" refers to the maintenance of the station at the point where the contract requires one. In view of the language

of the contract sued on, we do not think there was error in overruling the demurrer on this ground.

The plaintiff in error also upon his demurrer to the petition presents the argument that a contract to locate a depot at a certain point is void, as being contrary to public policy; and the argument is presented "that where a corporation like a railroad company has granted to it by a charter a franchise intended in a large measure to be exercised for the public good, any contract which disables the corporation from performing these functions, without the consent of the state, is a violation of the contract with the state, and is void as against public policy.

The proposition here presented is not identical with the question presented this court in *Enid Right of Way and Townsite Co. v. Lile* 82 Pac. 810, and *L. K. McGuffin v. Coyle and Guss,* unreported (decided January term, 1906). In the first the question presented was the power of a right of way and townsite company to take from a citizen an obligation to pay it a sum of money, which obligation was to be due and payable when a railroad should be completed to the point designated in such obligation; and in consideration of a railroad station and depot being located there; and in the second case the cause was presented and determined upon the question of the right of an officer of a railroad company to enforce an obligation payable to himself conditioned upon the railroad company's construction of a line of railroad to a point named in the obligation. This court held in each of said cases that such obligation was void upon the ground of public policy, and could not be inforced; that the railroad company affected thereby was a *quasi* public corporation with

fixed duties as such, to the public and its stockholders, and an obligation entered into between third parties and its agents or officers for their use and benefit by which transaction it was intended to influence the railroad company to build its line of road and locate a station at a particular point, was a species of bribery prohibited under the law, and non-enforceable to the same extent that such contract or agreement would be nonenforceable with any other public officer.

This case deals with quite a different problem, and squarely presents the proposition as to whether or not a railroad company for the purpose of aiding in the construction of its line of road may accept and enforce an obligation payable to it, conditioned upon the construction of its line of road to a given point within a given time and the establishment and maintenance of the depot there.    There are many respectable authorities which affirm this proposition.   See *James D. McClure v. Mo. River, Fort Scott & Gulf Railroad Co.,* 9 Kan. 373; *Railroad Co. v. Baab,* 9th Watts, (Pa.) 458; *Berryman v, Trustees, Cinn. Southern Railway,* 14 Bush (Ky) 755; *Racine County Bank v. Ayers,* 12 Wis. 570, and *Bank v. Hendrie,* 49 Iowa 402, and in the judgment of this court it is nearer in consonance with sound reasoning in this case to hold that under the facts presented the contract is not void and therefore is inforceable. If the law were otherwise it would be equivalent to a declaration that a community desiring the advantages of a line of railway, where chartered privileges permit its construction, would be under the law prevented and prohibited from inducing such construction by aiding the same.

A railroad company is only a *quasi* public corporation and as such it must not only take into consideration the public

welfare, but the private welfare of its shareholders as well in the location and construction of its line of road. A donation to its assets which enables it to build a contemplated line immediately and a consideration in part of its immediate construction, or which enables it to build its line upon a route that it might not otherwise be able to build, could not be held to be void upon the ground of public policy, and in this respect it must be held to be the privilege of a railroad company in determining its duty towards the public and its shareholders to determine what line and between what points its line shall be constructed. Where, as in this Territory, a railroad corporation may take and hold voluntary grants of real estate and other property to aid in its construction, it may, we think, determine its line of construction, taking into consideration such voluntary grants of property or property rights. See section 1022, Wil. Ann. Stat. 1903, authorizing a transaction of this kind:

"Every corporation formed under this article and every railroad corporation authorized to construct, operate or maintain a railroad in this Territory shall also have power to take and hold such voluntary grants of real estate and other property either within or without the Territory, as may be made to it to aid in the construction, maintenance and accommodation of its railroad."

With this view of the law it was not error for the trial court to overrule the demurrer to the petition upon the ground that the contract entered into and which is sought to be enforced is void, because it is against public policy.

A second assignment of error by the plaintiff in error is based upon the order of the court overruling a demurrer to plaintiff's evidence. The plaintiff in support of its cause of

action proved the execution and delivery of the contract sued upon, the construction of the railroad in full compliance with the contract, and the refusal of the defendant upon demand to make payment in accordance with the terms of the contract, and the assignment of said contract by the Choctaw Northern Railway Company to the plaintiff. Under this assignment of error it is urged that there is a failure of evidence sufficient to entitle the plaintiff to recover, because it is not shown that the road constructed was constructed by the Watonga and North-Western Railroad Company. It is we think a sufficient answer to this proposition that the contract does not provide for the construction of a line of railroad by said company.

The contract is a promise to pay to the Watonga and Northwestern Railway Company, its successors and assigns, the amount named, for the purpose of inducing and aiding in the construction of a railroad from Geary to Watonga by June 1, 1901, and the establishment of a depot at Watonga. These conditions of the contract, we think, were shown by the plaintiff's evidence to have been fully complied with; but it is urged under this assignment of error that the contract was made with the Watonga and Northwestern Railway Company, and the evidence does not show that the plaintiff is a successor in interest or assignee of such company, and the proof is insufficient in that it showed that the instrument sued on was assigned to the plaintiff by the Choctaw Northern Railway company. Touching this question it was shown in evidence that after the execution of the agreement, and after the passage by the legislature of Oklahoma of chap. XI of the laws of 1901, being an act, "authorizing incorporated companies to amend their articles of incorporation," the Watonga

and Northwestern Railway Company, pursuant to said act of the legislature amended its articles of incorporation in several particulars, among which was the change of its name from the Watonga and Northwestern Railway Company to the Choctaw & Northern Railway Company. Such change was authorized by law and by force and by reason of it the Watonga & Northwestern became the Choctaw & Northern Railway Company. If there was any change the Choctaw Northern was the successor of the Watonga and Northwestern Ry. Co. and succeeded to all of its property rights and franchises. This carried the defendant's contract to the Choctaw Northern Company, which company thereby became the owner, and by its assignment properly passed the title to the plaintiff. In fact we think the endorsement of the Choctaw Northern of the contract sued on to the plaintiff was the endorsement of the Watonga and Northwestern, for it is the same company changed in name by authority of law.

It is urged in this connection that there was a mistake made in the procedure by which the articles of incorporation of the Watonga and Northwestern were amended in this that the statute requires that the new articles should be signed by all the directors and officers of the company, and one of the directors did not sign the same, and therefore the Choctaw & Northern Company was an unincorporated concern. Let this be as it may, the obligation of the plaintiff in error was not cancelled thereby, and probably the Territory alone would have the right to complain of an unauthorized franchise. The plaintiff in error we think could not defeat his obligation for such cause. He gave an obligation which was valid to the Watonga & Northwestern Railroad Company, and his obligation was not discharged because such company

attempted to change its articles of incorporation, and failed because of some slight error in an attempted compliance with the law authorizing such change.

The provisions of a statute passed subsequent to the making of a contract could not have the effect to change the obligations of the parties under such contract, and there was here no attempt at such a change.

The plaintiff in error contracted to pay the amount stipulated in consideration of the construction of a railroad which has been constructed, and his liability is thereby fixed.

The third assignment of error presented in the brief of plaintiff in error is based upon the ruling of the court in refusing to admit evidence tendered by the plaintiff in error. The ruling here complained of was based upon an attempt by the plaintiff in error to show that the Watonga and Northwestern Railroad Company under that title had nothing to do with the construction of the road. That it was built under contract with the Choctaw & Northern was unquestioned, and the court held that it was immaterial under the circumstances whether the Watonga and Northwestern by name figured in the contract for construction. In this we think the court held correctly.

The fourth assignment of error as argued in plaintiff in error's brief is that the court erred in refusing to admit evidence of the conditional delivery of the instrument sued on. Touching this fourth assignment of error, the defendant presented his defense to the court and jury under a general denial, and offered to show thereunder that at the time of the delivery of the instrument sued on that he attached conditions to the delivery, and the offer of proof of these conditions was rejected by the trial court, upon the theory that the terms of

the instrument delivered could not be varied by parol, and for the reason that no defence was pleaded which authorized the introduction of such proof. The plaintiff in error thereupon asked leave to amend his answer for the purpose, as we understand from the record, of allowing evidence of a conditional delivery of the contract which would vary the terms of liability thereunder. This the court refused, and it is argued that such refusal was an abuse of discretion. Our statutes, sec. 829 Wil. Ann. Stat., provides:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise."

The instrument was delivered to Seymour Foose who was a director of the railroad company. The court authorized proof showing non-delivery, but denied proof showing conditions of delivery which varied the terms of the instrument. We are unable to determine upon consideration of all the facts and circumstances of this case that the refusal of the court to permit such amendment to be made for the purposes stated was an abuse of discretion which would justify a reversal of the judgment entered.

Finding no reversible error in the record, the judgment of the court below is affirmed.

Pancoast, J., who presided in the court below, not sitting; Hainer, J., dissenting; all the other Justices concurring.