[S. F. No. 4670.   Department Two.—June 22, 1908.]

GEORGE McCOWEN and HALE McCOWEN, Respondents, v. J. W. PEW, Appellant.

CONTRACTS WITH RAILROAD COMPANY—VIOLATIONS OF PUBLIC POLICY.— Contracts by a railroad company with individuals to preclude itself from establishing or locating depots and stations on it, at any other than certain localities, or within certain prescribed limits, and contracts with individuals or officers or agents assuming to have influence with the railroad company, agreeing for a consideration to secure the location of stations or depots in a particular locality, or secure the building of its road by a particular route, are void, as being in violation of public policy.

ID.—VALID CONTRACTS—OTHER ROUTES OR STATIONS NOT EXCLUDED— INDUCEMENT FOR PARTICULAR ROUTE.—A railroad company has the right to select any particular route for the location of its road; and contracts, where the consideration moves directly from the individual to the railroad company as an inducement to the construction of its line between certain points, and contracts for the establishment of depots or stations at particular points on the route selected, where there is no provision or stipulation that the route selected, or depot, or station to be established, is to be located or established to the exclusion of other routes and locations, are valid, a  enforceable.

ID.—SPECIFIC PERFORMANCE—CONTRACT WITH OWNERS OF TIMBER-LANDS.—Specific performance may be decreed of a contract by the owners of timber lands along one of four routes contemplated by

a railroad company for the construction of its proposed railroad conferring upon it an option to purchase their timber-lands at their fair cash value, as an inducement to locate its road over a particular proposed route, which would benefit their other lands and also would benefit the railroad company in the matter of freight, in the absence of any showing that the route selected was injurious to the public.

Id.—Presumption in Favor of Validity of Contract—Error of Court.—It was error for the court to hold that such contract for the sale of timber-lands to secure the location of a particular route was void *per se,* as against public policy. A contract should not be declared in contravention of public policy, unless it affirmatively appears to be so. Public policy supports contracts made in inducement to the building of a railroad, between certain points, in the absence of a showing that they were made in disregard of the public convenience, and in violation of the clear wants and necessities of the people.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Jesse W. Lilienthal, and J. E. Pemberton, for Appellant.

McNab & Hirsch, D. M. Delmas, and Henry C. McPike, for Respondents.

LORIGAN, J.—This case was here before (*McCowen* v. *Pew,* 147 Cal. 299, [81 Pac. 958]) and was remanded for a new trial because an incorrect rule of law was applied by the trial court for the measurement of damages.

The action was brought in the superior court of Mendocino County. The complaint alleged that plaintiffs were the owners of about eleven hundred and sixty acres of land in said county and on October 16, 1899, entered into an agreement with the defendant, J. W. Pew (which agreement is set forth in the complaint), whereby an option was given to the latter to dispose of said property to others, or to purchase said property himself, within one year from the date of the option, at the price of fifteen dollars per acre; that said Pew had not exercised his right under the option within the year given, but still asserted and claimed some rights thereunder. The prayer was for a decree adjudging the agreement to be void

and as of no validity and quieting the title of plaintiffs to the property.

The defendant Pew filed an answer; also an amended cross-complaint, which was answered by plaintiff. In the amended cross-complaint he alleged the making of the agreement, as set forth in the complaint, granting to him an exclusive option for twelve months to acquire said property from plaintiffs,. and then proceeds to further allege:

"IV. That in the making of said agreement this defendant was not acting in his own interest and behalf, but for others associated with him, who were to construct the railroad here-inafter mentioned, and as to the interest of said persons, although made and taken solely in the name of this defendant, as party of the second part.

"V. That at the time said agreement and contract was made, this defendant, and the persons so associated with him, were contemplating and preparing for the building of a railroad from some point on the line of the railway of the San Francisco & North Pacific Railway Company into some portion of Mendocino County, in which timber and wood could be procured in large quantities; that at said time four different locations (or routes) for said proposed railroad were under consideration by them, and it had been determined by them to so build said railroad at some one of the said contemplated locations only, but it had not been decided at which one; that one of the said contemplated locations for said proposed railroad was from Ukiah, northerly to Willits in said county; that the building of said railroad at last-mentioned location would greatly increase the value of the lands hereinbefore described by making the timber thereon accessible to a market; but the building thereof at any one of the other proposed and contemplated locations would not increase the value of these lands; that the selection of a route or location depended largely upon securing options upon timber-lands along the line of the proposed railway; that all these facts were well known at the time to plaintiffs, and that the inducements and consideration moving the plaintiffs, and causing them to enter into said contract or agreement was the encouragement and inducement of the building of said railroad from Ukiah to Willits in preference over said other routes.

CLIII Cal.—47

"VI. That thereupon and thereafter this defendant, and the persons so associated with him, secured the selection of said route and location for said railroad from Ukiah to Willits in preference to said other routes and locations; and said railroad was thereupon surveyed and laid out and is now in process of construction and being rapidly built and pushed toward completion, and will be built from Ukiah to Willits within a short time; and that the consideration and inducement causing preference to be given to said location thereof was the option given in said contract hereinbefore set forth, giving this defendant the privilege of purchasing said land, and similar options in similar contracts regarding other lands adjacent thereto and in that portion of the county, and said options were all taken and said contracts all entered into solely for the purpose of securing freight for said railroad, and the added valuation that would be given to said lands by the construction of the railroad in excess of the price set in said contracts respectively."

Then follows allegations in the amended cross-complaint addressed to the subject of damages with which we are not concerned on this appeal, followed by a prayer for a specific performance of the agreement to convey.

The pleadings thus stood when the cause came on again for trial, after being remanded as heretofore stated, and the trial court directed that the issues raised by the cross-complaint and answer be first tried. When the cross-complainant proceeded to put in his evidence in support thereof, counsel for plaintiffs objected to the introduction of any evidence in support of it on the ground that the cross-complaint did not state facts sufficient to constitute a cause of action or defense to the action of plaintiffs. The court sustained the objection, dismissed the cross-complaint and entered judgment in favor of plaintiffs quieting their title as prayed for in their complaint. From this judgment and an order denying their motion for a new trial the cross-complainant Pew appeals, and the only question necessary for consideration is the refusal of the trial court to permit the introduction of any evidence by appellant in support of his cross-complaint.

While the particular ground upon which the trial court based its ruling in that respect is not disclosed by the general objection of respondents interposed upon the offer of appel-

lant on the trial, or from the ruling of the court upon it, it, however, appears from the exhaustive discussion in the briefs on both sides here, that the special point made was that from the allegations of the cross-complaint it appeared, that the contract sought under that pleading to be specifically enforced was contrary to public policy and void, and hence, specific performance of it could not be decreed.

The allegations of the cross-complaint upon which this contention was based are those which we have heretofore specially quoted, and particularly those alleging that at the time the agreement granting an option was entered into several routes from some point on the line of the San Francisco and North Pacific Railroad Company into some portion of Mendocino County were in view, including one from Ukiah to Willits; that the inducements and consideration moving from plaintiffs and causing them to enter into said agreement granting an option to cross-complainant was the encouragement and inducement of the building of the said railroad between the last-mentioned points in preference over said other routes; that having procured the option from plaintiffs, defendant and his associates secured the selection of the route of the railroad from Ukiah to Willits in preference to other locations and that the consideration and inducement causing preference to be given to said location was the option given in said contract heretofore set forth granting the appellant the privilege of purchasing said land, together with similar options and similar contracts regarding other lands adjacent thereto and in that portion of the county of Mendocino.

To agreements made under such circumstances, and upon such considerations and inducements as these allegations show the agreement relative to this option to have been made, it is insisted by respondents that the rule must be applied that railroad companies are *quasi*-public corporations, in the location of whose lines the public has an interest; that it is the paramount duty of such companies to establish their lines with routes through localities where the wants and necessities of the public shall be best subserved; that the policy of the law is that such companies shall be left to a free and unlimited exercise of their discretion in locating such lines in the interest of public necessities and conveniences; that contracts between a landowner and a company for the estab-

lishment of the line of road to subserve and promote the private and pecuniary advantages of those entering into them, are in contravention of such policy and void, because the tendency of all such contracts is to sacrifice the public interest to the selfish private advantage of the contracting parties.

We make no question about the rule as contended for by respondents, but we are satisfied, taking the allegations of the cross-complaint with the other pleadings in the case, which must be considered for that purpose (although it was on the allegations of the cross-complaint alone that the point of invalidity was based) that it does not appear therefrom that in the granting of the option any restriction or limitation was imposed thereby on Pew and his associates, who contemplated building the railroad, as to the selection of a route, or that the agreement was entered into for the private advantages of the contracting parties, or in disregard of the public interests.

As far as the contracting parties are concerned, while not particularly material to a consideration of the proposition involved, it may be said that it was alleged in the cross-complaint that the price of fifteen dollars an acre for the land in question "was reasonably fair and just," and this is admitted in the answer to the cross-complaint to be true. As to the allegations concerning the consideration and inducement to the granting of the option, it is quite apparent that they were made by the cross-complainant as a foundation for a claim for special damages for the cutting of the timber during the life of the option, and for no other purpose (*McCowen v. Pew,* 147 Cal. 299, [81 Pac. 958]), while the answer to the cross-complaint denies that any such consideration entered at all. But while we mention these matters it must, of course, be conceded that the validity of the contract is not to be determined from their consideration. Even if, as between the parties, this contract was fair and the allegations of the cross-complaint appeared to have been made for a purpose aside from raising any question as to the validity of the consideration for it, yet, for whatever purpose said allegations were made, if it appears therefrom that the consideration and inducement for the agreement were such as are contrary to public morality and public policy, it is the duty of the court to annul the contract for that reason "whenever and wherever

it might appear in the cause," even though no objection to its enforcement on that ground was raised by either party to it. (*Kreamer* v. *Earl*, 91 Cal. 112, [27 Pac. 735]; *Morrill* v. *Nightingale*, 93 Cal. 452, [27 Am. St. Rep. 207, 28 Pac. 1068]; *Oscanyan* v. *Arms Co.*, 103 U. S. 267.)

Now to a consideration of the allegations of the cross-complaint, to determine whether in the making of the agreement for the option any rule of public policy was infringed. Preliminary to a consideration of these allegations it is to be observed, however, that the agreement itself granting the option (the terms of which we have not heretofore particularly referred to), provides for an option in favor of respondent Pew to purchase the eleven hundred and sixty acres of timber land at fifteen dollars an acre, and recites that the owners (McCowens) "desired to dispose of same and to have the assistance of said party of the second part (Pew) in so doing without cost to the parties of the first part" and declares the consideration for the option to be "for value received, . . . and to induce said party of the second part to undertake the disposition of said land." On the part of Pew he stipulated "to use his best endeavors to dispose of said property, either by acquiring same or selling same to others" without cost to the McCowens. These are the only provisions of the contract of option itself. There is nothing therein relative to any conditions or stipulations or restrictions as to any route for a contemplated railroad, nor any mention made of a railroad at all.

Neither when we come to an examination of the allegations of the cross-complaint do we find anything from which it appears that any agreement was made that in consideration of the granting of the option the selection of any particular route was provided for. As we understand and construe these allegations it appears therefrom that Pew and his associates contemplated constructing a railroad through some portion of Mendocino County; that various routes were in contemplation, but no particular one had been decided on when the option in question was obtained; that with a knowledge that said road was to be built on some route the option was given by the McCowens as an inducement and encouragement towards the building of the railroad over a route from Ukiah to Willits; that defendant Pew and his associates subsequently

secured the selection of said railroad route between these points in preference to other routes and locations; that the option so given, together with similar options and similar contracts regarding other lands adjacent thereto was the consideration and inducement causing preference to the building of the route between Ukiah and Willits, and the said options were all taken, and said contract entered into, solely for the purpose of securing freight for said railroad and the added valuation which would be given to said lands in excess of the price stated in said contract by the construction of said road.

It will be observed that there is nowhere in these allegations any statement that Pew and his associates agreed to select any particular route to the exclusion of any other route, nor, in fact, as far as said allegations are concerned does it appear therefrom that they undertook to do anything. Neither is it alleged that the route which was selected was materially, or at all, injurious to the public interests, or that any other route would have better subserved any public want or necessity. All that appears is that Pew and his associates, for the purpose of securing freight for the railroad they contemplated building, took options upon timber-lands in the locality through which the line of said road might be built and such freight received; that certain owners of land, as an inducement to the building of the railroad over one of the four contemplated routes, gave an option upon their lands at a price specified in the option representing the full value of the land and that the only advantage to be secured to the builders of the road (as full value for the land was to be paid) was the obtaining of freight to be carried. A contract made under these circumstances and upon the consideration and inducement disclosed by the cross-complaint is, we are satisfied, when tested by the decisions in violation of no rule of public policy.

In the absence of anything to the contrary in the allegations of the cross-complaint it must be taken that Pew and his associates were persons contemplating the formation of a railroad corporation, and that the options obtained by Pew were for the benefit of such corporation, and that any inducements operating upon the granting of such options must be taken to have been extended to the contemplated railroad itself.

Contracts or agreements between railroad companies and individuals, or between individuals and officers of the company, where one of the particular parties has contracted to secure certain advantages from railroad corporations as to the location of routes of road between designated points, and for the establishment of depots and stations in certain localities, have in numerous cases been before the courts for determination as to their validity. These agreements that we have referred to resolve themselves into three classes, and the rules to be extracted from the decisions dealing with them are first, that in all cases where a railroad company agrees with an individual to preclude itself from establishing or locating depots or stations on its road at any other than certain localities, or within certain prescribed limits, such agreements are void. Contracts of this kind are plainly in violation of a clear duty owed by the railroad company to the public, as public agents, to locate their depots and stations where the public wants and necessities demand their establishment, and to change them and provide others as future public necessities may require. Any attempted limitations or restrictions on the part of the railroad company as to the exercise of such public duty is subversive of the public interests and void. (*Williamson* v. *Railroad*, 53 Iowa, 126, [36 Am. Rep. 206, 4 N. W. 870] ; *St. Louis etc. R. R. Co.* v. *Mathers*, 104 Ill. 257 ; *St. Joseph etc. R. R. Co.* v. *Ryan*, 11 Kan. 602, [15 Am. Rep. 357] ; *McClure* v. *Missouri River R. R. Co.*, 9 Kan. 373.)

The second class relates to agreements where some individual or officer or agent of the railroad company, under an assumption of influence with that corporation, has agreed for a consideration to secure from the corporation the location of stations or depots in a particular locality, or to secure the building of its road by a particular route. Such contracts are uniformly held to be void. They constitute a species of bribery of the officers of the company and are necessarily corrupt in their tendencies as influencing the officers of the corporation for mercenary considerations and for their private emolument to forego the duties they owe to public interests to locate such public conveniences where public necessities require that they should be established. Some of the cases declaring the invalidity of this class of agreements are *Fuller* v. *Dame*, 18 Pick. 472 ; *Bestor* v. *Wathen*, 60 Ill. 138 ; *Holladay*

v. *Patterson,* 5 Or. 177, and others to which we shall later more particularly refer.

The last class of cases are those involving contracts such as the one under consideration here, where the consideration is to move directly from the individual to the railroad company as an inducement to the construction of its lines between certain points, or analogous cases involving contracts providing for the establishment of depots or stations at particular points on the railroad, but where there is no provision or stipulation in the agreement that the route selected or depot or station to. be established, is to be located or established to the exclusion of other routes and locations.

It is to be observed that there is no law which requires a railroad corporation to select any particular route for the construction of a contemplated road. It is to be assumed that the corporation will build through that particular territory where the public necessities require its construction and where its material benefit will be best advanced. But there is no law which requires it to do so. In this state any three persons may incorporate to construct a railroad and may select such route as they choose to build over, notwithstanding a different route might be more to the public interest. In the absence of any law requiring a particular route to be selected, it is necessarily left to the judgment of the corporation to do the selecting, and vested with such discretion, in making a selection between different routes, we do not understand the rule to be that the company for a consideration moving directly to itself and as an inducement thereto, may not determine as between contesting localities in favor of one locality as against the others, or that such an agreement is *per se* illegal and void.

Necessarily, the position of respondents is that the agreement in question here is *per se* void. This is what they do claim, and could not claim otherwise, because there is nothing in the allegations of the cross-complaint that the route selected was not the most advantageous to public interests. They insist, however, that it was not necessary for it to so appear; that any contract whereby a railroad is induced to make a particular selection in consideration thereof is of itself invalid. If this position were correct, it would naturally and logically follow that every contract whereby property was to be con-

veyed, or money contributed by another as an inducement to the building of a railroad over a particular route, whether it appeared that the public interest would be affected or not, would be void, and it would further follow that no authorities could be found sustaining such a contract. To the contrary, however, the great weight of authority, and the prevailing doctrine is, that such agreements of themselves are not void; that they do not contravene any rule of public policy and are enforceable.

Now, as to the authorities sustaining such contracts and the cases upon which respondents reply for their invalidity. And first as to the authorities supporting this contract.

In Greenhood on Public Policy, pp. 321, 322, it is said: "The manner in which the majority of the railroads of the country have been built is, in all probability, familiar to every one. Men in subscribing to railroads do so out of self-interest. The conditions imposed are made with reference to the enhancement of the value of their own property, or to their personal convenience . . . It cannot be said that a subscription to a railroad corporation, conditioned on the location of its route in a particular section or direction, has any tendency to influence the corporation to disregard the public convenience; for it goes to a place to obtain traffic, and no public policy requires it to select the dearest route it may find. If it does prejudice the public, it is a matter of easy proof. And if such proof can be furnished any contract of subscription will fall. But in the absence of such proof, *prima facie* any subscription to a railroad corporation conditional upon its building its line in a particular route or through a particular town or country is valid. The contrary view has been sustained by a small but respectable minority. The majority hold that, having fulfilled the condition, the corporations have the right to insist upon the agreement."

In *Piper* v. *Choctaw Northern Townsite and Imp. Co.*, 16 Okla. 436, [85 Pac. 965], it is said: "This case squarely presents the proposition as to whether or not a railroad company for the purpose of aiding in the construction of its line of road, may accept and enforce an obligation payable to it, conditioned upon the construction of its line of road to a given point within a given time, and the establishment and maintenance of a depot there. There are many respectable authori-

ties which affirm this proposition, and in the judgment of this court it is nearer in consonance with sound reasoning in this case to hold that under the facts presented, the contract is not void, and therefore is enforceable. If the law were otherwise, it would be equivalent to a declaration that a community desiring the advantages of a line of railway, where chartered privileges permit its construction, would be, under the law, prevented and prohibited from inducing such construction by aiding the same. A railroad company is only a *quasi*-public corporation, and, as such it must not only take into consideration the public welfare, but the private welfare of its stockholders as well, in the location and construction of its line of road. A donation to its assets which enables it to build a contemplated line immediately, and a consideration in part of its immediate construction, or which enables it to build its line upon a route that it might not otherwise be able to build, could not be held to be void upon the ground of public policy; and in this respect it must be held to be the privilege of a railroad company in determining its duty towards the public and its shareholders, to determine what line and between what points its line shall be constructed."

In *Baltimore etc. R. Co.* v. *Ralston,* 41 Ohio St. 575, the court declares on this same point: "That public policy forbids the enforcement of contracts to induce the location of railroad lines at particular places in disregard of the rights of stockholders and the public is very true. Contracts for location, providing private emolument for the officials who sanction them, are of course void. And even if the stipulated location turn out to be the best that could have been made, and entail no detriment to stockholders or the public, yet such contracts are held in well-considered cases, and, we think, correctly, to be against public policy as a dangerous exercise of official power for private gain.

"In the case at bar these objectionable features are not present. The stipulated compensation was for the company alone. And it may well be that it was a matter of indifference to the stockholders and public whether the route was through Defiance or not. The propriety of the location in respect to particular points when the charter is silent is of necessity left to the managing officers of the company, and we fail to see any illegality or immorality in their stipulating for the benefit

of the company in awarding the advantages of location as between contesting localities. The general doctrine that such an agreement is not void *per se* as against public policy is laid down in the leading case of *Cumberland Valley R. R. Co.* v. *Baab*, 9 Watts, 458, [36 Am. Dec. 132], and has been frequently recognized in analogous cases in our supreme court, notably in the decisions sustaining contracts to take stock conditioned on a particular location."

In 23 Am. & Eng. Ency. of Law, p. 688, the same general doctrine is announced that, "contracts for the location of railroad lines at particular places are not void *per se* as against public policy, but they are illegal where calculated to prejudice the interest of the public or of the shareholders of the road, or where they provide for private emoluments to the officers of the road who are intrusted with the duty of choosing its location."

These citations sufficiently declare the prevailing doctrine which finds support in numerous authorities, among others, *Cumberland R. Co.* v. *Baab*, 9 Watts, (Pa.) 458, [36 Am. Dec. 132]; *McClure* v. *Missouri River etc. R. Co.*, 9 Kan. 373; *Workman* v. *Campbell*, 46 Mo. 305; *Telford* v. *Chicago etc. R. Co.*, 172 Ill. 559, [50 N. E. 105]; *Louisville etc. Co.* v. *Sumner*, 106 Ind. 55, [5 N. E. 404, 55 Am. Rep. 719]; *Racine Bank* v. *Ayres*, 12 Wis. 512; *Berryman* v. *Cincinnati Southern R. R. Co.*, 77 Ky. 755; *Texas and St. Louis R. R. Co.* v. *Robards*, 60 Tex. 545, [48 Am. Rep. 268]; *Harris* v. *Roberts*, 12 Neb. 631, [41 Am. Rep. 779, 12 N. W. 89]; *Cedar Rapids First Nat. Bank* v. *Hendrie*, 49 Iowa, 402, [31 Am. Rep. 153]; *Supervisors* v. *Wisconsin Cent. R. Co.*, 121 Mass. 460; *Lyman* v. *Sub. R. Co.*, 190 Ill. 320, [60 N. E. 515]; Elliott on R. R., 3d ed., secs. 121-386; *Missouri Pacific R. R. Co.* v. *Tygard*, 84 Mo. 263, [54 Am. Rep. 97].

Some of these authorities cited relate to the validity of contracts providing for the transfer of property, or the contribution of money, to railroads as a consideration or inducement to the building of their line of road over certain routes or between designated points. Others relate to similar contracts inducing the establishment of depots or stations in particular localities. In principle there can be no distinction between such contracts as to the objects sought, whether they pertain to lines of road or the location of depots or stations.

The proposition in all these cases decided is, that in the absence of any agreement that the route selected, or the stations located, shall be to the exclusion of other routes or stations, they are not contrary to public policy, and that the rule applies equally to both classes of contracts.

Now, to examine the authorities cited by counsel for respondents in support of their contention as to the invalidity of the contract, and we shall refer only to those from which they have quoted excerpts in their briefs. We make no question as to the correctness of the principles announced in almost all those cases, but, in our judgment, the facts in each case to which they were applied were radically different from those in the case at bar.

Recurring to these cases. In *Reed* v. *Johnson*, 27 Wash. 42, [67 Pac. 381], the evidence disclosed that certain officers of the Northern Pacific Railroad Company in consideration that they should receive a portion of the proceeds of plaintiff's land, agreed to so locate the line of said road that it would run through a certain section of land and further agreed to locate a depot within the section; that the company had contemplated building its line by another route but by reason of the inducement above stated the officers having in charge the location of the line and depots determined to change the route and locate both the line and depot upon said land. In the next case relied on, *Bestor* v. *Wathen*, 60 Ill. 138, the railroad company made a contract with a certain construction company to build its road. While building, the construction company, the president of the railroad company, one of its directors, and its construction agent entered into a contract with the owner of one hundred and sixty acres of land, situated where the road then in process of construction was expected to cross the Illinois Central Railroad, by the terms of which the owners agreed to sell the first-named parties an interest in the land. The only consideration was that the so-called purchasers should "aid, assist and help in building the road upon said land." The court refused to enforce either of these contracts. In both these cases the contracts were between an individual and certain officers of the railroad company who were taking advantage of their position as agents of the railroad company to contract for their individual benefit. It is apparent from the opinions in both these cases

that the railroad company had nothing to do with these con-
tracts and had no interest in them; that they were made for
the private and personal benefit of certain officers of the
company in the one case, and certain officers and the con-
tracting company in the other. They were without the knowl-
edge of the company and in violation of the duties of the
contracting parties to them. It is obvious that the court did
not there have under consideration contracts made with the
railroad company itself or for its benefit, but those made
by certain of its agents and officers with outsiders, looking
to the personal advantages of said officials alone. Such con-
tracts were clearly a fraud upon the corporation and its stock-
holders whom the officers and agents represented. These con-
tracts fell within the second class of cases, to which we have
heretofore referred, and which are universally condemned as
fraudulent upon the rights of the corporation and void.

In *Woodstock Iron Co.* v. *Extension Co.,* 129 U. S. 643,
[9 Sup. Ct. 402], a railroad company contracted with another
company of like nature to construct a railroad by the nearest
and cheapest route from Atlanta to Columbus for a considera-
tion of twenty thousand dollars a mile. One of the directors
of the extension company and also a director in the railroad
company negotiated on behalf of the extension company a
contract with an iron company to deflect the road at a
certain point lengthening it about five miles, for which the
iron company agreed to give a right of way through its
property and convey certain tracts of land and pay certain
sums of money. The railroad company had no knowledge of
the contract, and the court held the contract void as immoral
in its conception and corrupting in its tendency; that it was
nothing less than a bribe offered to the employee to disregard
his contract with his employer. Of course, such a contract
would be indefensible, but the contract at bar is in no manner
similar to it.

*Fuller* v. *Dame,* 18 Pick. 472, is also cited as supporting
the contention of respondents. But there the company, how-
ever, had no knowledge of the contract or any interest in it.
Its existence was not even known to it or its officers. All
that was held in that case was that a contract made by a stock-
holder of a company with a property owner to use his influ-
ence with the company for the establishment of a depot in a

.particular locality was a fraud upon the other stockholders and upon the company and void as against public policy. It will be observed that this case also falls within the second class of cases we have heretofore mentioned.

A case also relied on is *Enid Right of Way and Township Co.* v. *Lile,* 15 Okla. 328, [82 Pac. 811]. This case, if its apparent force was not destroyed by the language used in a. subsequent decision by the same court, tends, more than any other cited by respondents, to sustain their contention. In the Enid Right of Way case the affirmation of the judgment was by an equally divided court. An exhaustive dissenting opinion was filed, in which an analysis of all the cases supporting the prevailing opinion was made, and they were differentiated from the case under consideration by the court, and the conclusion reached by the judges dissenting, upon a review of all the authorities bearing on the question, that the weight of authority was in favor of the validity of the contract there in question, but which the prevailing opinion discountenanced as contrary to public policy. In that case the action was upon a promissory note given by defendant Lile to the plaintiff, which was stipulated to be paid when the Denver, Enid & Gulf Railroad was completed to a point where the location of a depot on certain land was to be made. The note was held void as contrary to public policy. It is unnecessary to discuss the grounds upon which the court reached this conclusion, because, while the apparent effect of this decision is in favor of the position of respondents, this same court in a subsequent decision appears to have limited its application to contracts between third parties, looking to the exercise by them of influence with the railroad company to do something which was against public policy, because, in Piper v. *Choctaw Northern Township and Imp. Co.,* 16 Okla. 436, [85 Pac. 965], which we have heretofore quoted from, it is expressly held in conformity to the prevailing doctrine that a subscription moving directly to the railroad company to encourage the building of its railroad at a particular place, contravened no rule of public policy and was enforceable. In that opinion the Enid case, as also *McGuffin* v. *Coyle,* 16 Okla. 648, [85 Pac. 954, 86 Pac. 962], decided by the same court and relied on also by respondents are specially referred to and held not to militate against the general rule.

We have referred, we think, to all the cases quoted from by respondents in support of their position, and are satisfied that none of them have any application in support of the point they make.

While all these cases reviewed had relation to contracts concerning the establishment of depots or stations, the principle to be applied in determining their validity is no different from that which is to be applied with reference to contracts regarding the construction of a road between given points. This, of course, is conceded by counsel in citing them. It will be observed further, that in all the cases reviewed, the contracts in question were declared invalid because agents or officers of the companies had taken advantage of their position to further their private interests and secure personal emoluments to the disadvantage of the companies they represented. The contracts were not declared invalid because they related to the location of depots or stations (speaking now of the special matters involved in the contracts in those cases) at particular localities, but because the persons who made them had been guilty of fraud and corrupt conduct toward their principals—the corporations. None of the cases involved a contract between an individual and the company itself, or those contemplating the construction of the road, providing for the payment of money or property as an inducement to its construction over a particular route, the making of which, under the prevailing doctrine as we have shown countervails no rule of public policy.

The error of the trial court was in holding as it necessarily did, that *per se* this contract was void as against such policy. A contract should not be declared in contravention of public policy unless it is apparent that it contravenes some public statute, or is against good morals, or that its tendency is to interfere with the public welfare or safety. Nothing of this character appears from the allegations of the cross-complaint. Contracts for the conveyance of property, or the payment of money, in consideration of the building of a railroad within a given time and between certain points, as our court (*Spires v. Urbahn,* 124 Cal. 110, [56 Pac. 794]) says have become familiar as stimulants to the construction of such railroads and other public works. It is familiar history that the great railroads of the west have been largely aided in their con-

struction by contributions and donations made in inducement
to the selection of certain routes. States, counties, and cities
have granted subsidies to them to that end and the national
government in the building of the first transcontinental rail-
roads donated vast tracts of land as inducements to the build-
ing of such roads over the continent and between particular
points. Our statute (Civ. Code, sec. 465) provides for
the acquirement by a railroad company of grants and dona-
tions of real and other property which may be made to aid
and encourage the construction, maintenance, and accommo-
dation of such railroad. We refer to these matters as indi-
cating the public policy which supports contracts which are
made in inducement to the building of railroads and that no
contract which simply provides for the transfer of property
or the payment of money, or confers upon the company the
right to acquire either as an inducement to build its road
between certain points, should for that reason alone be held
in contravention of any public policy.

The most that has been held by any of the cases, and those
supporting the prevailing doctrine appear to so hold, is that
it may be interposed as a defense to the enforcement of such
contracts, that they were made in disregard of public conven-
ience and in violation of the clear wants and necessities of the
people. Of course, in the present case no such showing is
made. The trial court based its conclusion that the contract
for the option was invalid from the allegations of the cross-
complaint, which does not pretend to disclose anywhere that
any public convenience or necessity was subverted by the con-
tract. The court held, as a matter of law, that a contract
giving an option to purchase certain lands as an inducement
to the building of a line of railroad between certain points was
void upon its face—or void *per se.* The courts, however, as
we have seen, declare expressly to the contrary, and that such
a contract, in the absence of any showing that public interest
has suffered in its making, is valid and enforceable. The trial
court was therefore in error in refusing to permit the offer
of evidence on the part of appellant in support of the allega-
tions of his cross-complaint, and in dismissing his action pray-
ing for specific performance of the contract.

In disposing of this appeal we have not overlooked the
objection of respondents that the appeal from the order deny-

ing appellant's motion for a new trial cannot be considered because his notice of intention to move for a new trial was not served in time. We have examined the record and find no merit in the point.

The judgment and order are reversed and the cause remanded for a new trial.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.