McClure v. Gulf Railroad Co.

JAMES D. McCLURE V. MO. RIVER, FORT SCOTT & GULF
RAILROAD CO.

1. BILLS OF EXCEPTION; *Settling without Notice.* A judge may allow and
sign a bill of exceptions for one party, in the absence of, and without
any notice to the other party, though such power should be exercised
with great care and prudence.

2. ———— *Original Bill; No power to change.* Where the judge of the
court below has allowed and signed an erroneous or untrue bill of excep-
tions, the supreme court will not after the court below has adjourned
sustain a motion to send the transcript of the record back to the court
below, with the order that the judge may so amend the original bill of
exceptions that it may correspond with the facts, where the only effect of
the erroneous bill of exceptions is to require a reversal of the judgment
and the cause to be remanded for a new trial. [BREWER, J., dissenting.]

3. VOLUNTARY GRANTS, *in aid of Railroads, valid.* A railway company
may receive by voluntary grant, or purchase, and hold real estate for
the purpose of aiding it "in the construction, maintenance and accom-
modation of its railway."

4. ———— *Not void, if to secure a particular Route.* A contract to convey
real estate to a railway company for said purpose, provided it build a
railway to a certain place, and locate its depot within a certain town, is
not in contravention of public policy, or void.

5. EVIDENCE; *Error.* Where the district court has on the trial of a cause
excluded competent and material evidence, the supreme court will reverse
the judgment therefor upon petition in error of the party aggrieved.

*Error from Cherokee District Court.*

McCLURE brought his action in the district court for the
purpose of having a certain title bond executed by him to
and in favor of the *Mo. River, Fort Scott & Gulf Rld. Co.*
for eighty acres of land adjudged to be void, and to have the
same and the record thereof canceled, as being a cloud upon
his title. The land adjoins the city of Baxter Springs.
*McClure,* in his petition alleges that said title bond was never
delivered to the railroad company, but that on the 2d of
December 1869 a proposal was made to said railroad company
that if they would run their railroad through the corporate
limits of said city of Baxter Springs to the south line of the
state, and would erect certain depot and other buildings in
said city, etc., certain parties, of whom plaintiff was one,

would convey to said railroad company certain real property, and that in accordance with said proposal said bond was executed by the plaintiff, and was delivered to the mayor of said city to be held until said company should accept or refuse said proposition; that said company agreed to accept or refuse said proposition within ten days, but wholly failed to make its decision, or to locate the line of its road, until the 23d of March 1870, and that before such decision and acceptance plaintiff withdrew his offer and gave said company notice of such withdrawal, etc. The answer alleges that said title bond was an absolute agreement, that it was duly delivered to said company on the 6th of December 1869 by the plaintiff, and was duly recorded; that the defendant, by reason of said offers and propositions of plaintiff and others, and in consideration of the same, changed the line of its road from the route previously contemplated, and known as the " Tar Creek route," to the Baxter Springs route, and had built its road and was operating the same through the city of Baxter Springs to the south line of the state, and had built all the depot and other buildings at said city stipulated for by said plaintiff and others, and prayed judgment that said plaintiff be required to specifically perform his contract, and convey to defendant the said eighty acres of land by deed of general warranty according to the terms of said title bond. A demurrer to the answer was overruled, and plaintiff excepted. The case was tried at the June Term 1871. The court found the facts in favor of the railroad company, and gave judgment "that said plaintiff make, execute, and deliver to the defendant a deed in fee simple for the real estate in the petition and answer mentioned and described, or in default thereof that this decree stand and operate, at law and in equity, as such conveyance." The plaintiff prepared a bill of exceptions, which was presented to the district judge, and by him allowed and signed in the absence of and without notice to the defendant. The plaintiff brings the case to this court for review.

In this court counsel for defendant in error filed a motion,

supporting the same by affidavits, alleging that said bill of exceptions is not true, but false, and asking that this court make an order that such bill be returned to the district court to be corrected and resettled in accordance with the facts. Other facts bearing upon the application for such order, and upon the principal question decided in the case, are stated in the opinion.

*Wallace Pratt*, for defendant in error, in support of his motion:

An examination of § 3 of art. 3 of the constitution, and of § 7 of ch. 27, and § 564 of ch. 80, Gen. Stat., relating to the jurisdiction and powers of the supreme court, will show that this court has power to make the order asked for. Under the constitution the supreme court, by virtue of its *original* jurisdiction, has a superintending control of inferior courts, and other tribunals, and without the aid of statutes can *command* a judge or court to proceed according to law. By statute, appellate jurisdiction is given of proceedings in error, in addition to the original jurisdiction conferred by the constitution. This power is, "by special mandate or other proper mode to require the district court to carry the judgment or decree of the supreme court into execution;" § 7, ch. 27; and to compel complete and perfect transcripts of proceedings containing the judgment or final order sought to be reversed, to be furnished, as heretofore, under writs of error and *certiorari.* § 564, civil code.

The undisputed fact appears by the affidavits of the judge who signed the bill, and of one of defendants' counsel, that the bill of exceptions filed in this cause does not present the facts and questions of law as passed upon by the court below. Our motion is for an order referring the transcript back to the district court, that the judge may review the bill of exceptions and amend the same according to the facts. This is permissive and not necessarily mandatory. 6 Bac. Abr., 418, 420; 4 Johns., 508; 19 How., 8; 16 Wis., 38; 6 Johns., 279; 5 Wend., 132.

*H. C. McComas*, for plaintiff in error, upon the merits of the case:

1. The plaintiff's demurrer to the answer should have been sustained. The statute of this state limits the purpose for which railroad corporations may hold real estate by grant or purchase. But this answer prays for the specific performance of a contract to convey real estate to the defendant, a railroad corporation, without averring the object of contract to be within the provisions of the statute, that is, to aid the defendant in the "construction, maintenance or accommodation of its railway." Ch. 23, § 47, Gen. Stat. *Ergo*, the answer does not state facts sufficient to entitle the defendant to a decree for specific performance.

A contract to convey land to a railroad corporation for any other purpose is void. 1 Doug., (Mich.,) 401. The answer states that the line of the road was approaching the south line of the state; that the objective point of said road was *Preston, Texas;* that it would cost one hundred thousand dollars more to build the road by Baxter Springs than by Tar Creek, and impose on the company an annual expense of twenty thousand dollars. The Tar Creek route was the most direct and the cheapest route. The legal correlative of the doctrine of this court, that these corporations are such a *public use* that they may exercise the right of eminent domain, is, that where the interest of the corporation, as a mere private enterprise, conflicts with paramount public interest and policy, that *public interest* must prevail. Public policy, and paramount public interest, demand that this corporation should build its line of road, which is to be a "public highway," by the cheapest and most direct route to its objective point. But the answer sets up a contract by which it agreed to bend its line by the way of Baxter Springs in consideration that the plaintiff and other persons would give certain lands and city bonds, thus enabling this corporation to become a speculator in town lots, lands, and bonds. *Ergo*, the contract set out in the answer is against public policy, and void. *Mo. Pacific Rld. Co. v. Seely*, 45 Mo., 212.

2. Before in any event this bond could be binding upon the plaintiff, it must have been delivered to, and accepted by, the defendant; and the acceptance must have been in such a manner as to make the obligation reciprocal, so that the defendant would be bound to do something, as well as the plaintiff. According to the facts of the case the plaintiff signed this bond under a public pressure and excitement, and was assured, as an inducement to him to sign it, by the engineer who had charge of the construction of the road, that the question of location would be decided in ten days; that the bond was executed on the 2d of December, was taken to Detroit, Michigan, to be given to James F. Joy, the managing director of the defendant, (with the bonds of the other citizens for other lands,) *if he would agree*, as the agent of the defendant, to build the said road by Baxter; that the mayor of Baxter Springs took these bonds to Joy and made him the offer to give him these bonds if he would agree to do this; that Joy declined to accept the bonds and make such an agreement, but *retained* the bonds (without any authority from the plaintiff,) and said he would submit the matter to the directors; that the proposition was by him submitted to the directors with a tender of the lands if they would agree to run the road to Baxter; that they declined to accept the offer, and decided to go to Tar Creek; and Mr. Joy so notified mayor Denton by letter, which was read to plaintiff and others. Under this state of facts the bond should have been returned to plaintiff. It never was in the possession of the railroad by the authority or consent of the plaintiff. Fourteen days after the defendant had refused to accept the plaintiff's bond, a delegation from Baxter Springs, (wholly unauthorized by plaintiff,) met the board of directors of the defendant in Boston, Mass., and by other and different inducements caused the defendant to change the line of its road from Tar Creek to the Baxter Springs route, where it was finally built. And Joy, instead of returning the plaintiff's bond to him, or to mayor Denton, sent the same to the register of deeds to be recorded, and now claims a decree of specific performance,

.compelling the plaintiff to convey this land to the defendant. .Is there any doubt upon this statement of facts that the plaintiff is entitled to the relief prayed for in his petition? See 1 Parsons on Contracts, (5th ed.,) 475, §§ 1, 2. This action of the directors in declining to accept the offer of the plaintiff and others ended the matter. To bind plaintiff, the .proposition must have been accepted by the directors, in such a manner as would . make defendant liable to plaintiff also. There was no mutuality in the contract. The promisee was bound to do nothing. Where the instrument which evinces the obligation . of the promisor contains..a stipulation as to what the·promisee.must do, there must be such an .acceptance .by the promisee as binds him to do this thing; otherwise it is .a contract on one side only. There is no mutuality of obligation. 29 .Mo., 322; 21 Wend., 138. But if defendant in error answers that this statement is not in consonance with .the findings of fact by the court, we. reply, that we offered competent. evidence to prove the facts here . stated, which evidence was excluded by the court. *Ergo*, there is error in .the ruling and decision of the court in this behalf, affecting .the substantial rights of plaintiff.

3. The record also shows that after proving Joy's signature, the plaintiff offered in evidence the original letter of Joy to Denton, (which when received, about the 9th of March 1870, was read, to plaintiff,) informing these parties (including plaintiff) that their offer had been rejected by the directors, and they had determined to build the road by the Tar Creek route. This letter was excluded. All preliminary proofs had, been made, and no valid. reason was or could be given for its . rejection. It was competent evidence, and material as sustaining plaintiff's case..

.*Wallace Pratt*, and *C. W. Blair*, for defendant in error, upon the merits of the case:

1. The demurrer was properly overruled. The. power to .hold lands by grant is given by the statutes: Gen. Stat., 202, .§ 47. Limitations on such power must be pleaded by the

party asserting it.    9 Wend., 378; 1 Saund., 234, note 2; 2 Saund., 62, 66, note 5; 1 Chitty Pl., 221 to 223.

2. There is no vice in the agreement set up in the pleadings.    An agreement to aid the defendant in error, if it will build a road through a particular town, or place, is not against public policy.    Our railway system owes its existence to such aid.    24 How., 322; Sug. Ven., 226; 2 Story's Eq., § 1212.

3. If the agreement were contrary to public policy, the plaintiff in error cannot void it.    He is estopped from pleading the vice—having received the benefits accruing from the contract.    ·6 Kas., 153; 24 How., 322.

4. The evidence of plaintiff's witnesses established the fact that defendant located and built its road through, and its depot within, the corporate limits of Baxter Springs, by May 1870.    The petition also admits the fact.    Thus by plaintiff's own showing, the condition of the bond was fully complied with by defendant in error.    No time in which to perform being named in the contract, a reasonable time is understood. The petition contains no allegation of unnecessary delay in accepting the offer upon the part of defendant in error.

Equity will not allow a party to enjoy the consideration or benefits of a contract, and at the same time repudiate its obligations or burdens.    Plaintiff in error, and the other citizens of Baxter Springs, have received what they asked for. Equity will not allow repudiation.    6 Kas., 153.

Offers to prove circumstances or statements, surrounding, or made, when plaintiff in error signed the bond, were properly ruled out.    No other contracting party was present at the time such statements were claimed to have been made. No reformation of the contract is asked for in the petition.

The issue was not upon propositions made *by* the defendant, but upon those made *to* the defendant.    Offers to prove that a proposition was made to locate and build within ten days, were also objectionable under the pleadings.    No time was alleged in the petition, or in the contract, within which the defendant in error was to perform.    Nor was the proposition to locate or build a road a condition of the bond.    It was

to build a depot. 27 Iowa, 99. The act of building the road to, and the depot within, the corporate limits of Baxter Springs, accepts whatever offers were made. 1 Parsons' Cont., 404, 405, 406, 483.

5. The letter purporting to be written by Mr. Joy was properly ruled out. To make it admissible for any purpose, preliminary proof tending to show that it was sent by Mr. Joy, such as postmarks, or that it was by carrier, and the like, was necessary. None was offered as sending by Joy, or of the receipt by Denton, the mayor.

6. A compliance with the conditions of the bond by defendant in error entitled it to a decree of specific performance. ....

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error, the Railroad Company, makes a motion in this court that the transcript of the record be referred back to the judge of the district court before whom the action was tried, in order that said judge may review the bill of exceptions therein contained, and amend the same according to the facts. The bill of exceptions is perfectly regular upon its face. It was properly reduced to writing, signed, and allowed by the judge, and ordered to be made a part of the record, and all within the proper time, and all in due form. But two objections are urged to said bill of exceptions: First, it was signed and allowed by the judge in the absence of, and without any notice to, the defendant, or to its attorneys. Second, it is not a true bill of exceptions. The first objection is not tenable. A judge of a court may sign and allow a bill of exceptions for one party in the absence of and without any notice to the other party, or the other party's counsel, though it must be admitted such a thing should seldom be done. The judge in such cases should exercise a very careful and prudent discretion. If, in a case of emergency, it becomes necessary for a judge to sign and allow a bill of exceptions without the other party having an oppor-

1. Bills of exception; may be settled without notice to opposite party.

tunity of seeing it, he should read it very carefully, and know that it contains nothing but the truth. Neither is the second objection sufficient. But before proceeding further we would state that the motion of the defendant is founded upon two affidavits—one being the affidavit of the judge of the court before whom the action was tried, and the other being the affidavit of one of the counsel who assisted in trying the cause in the court below. Each affiant states upon oath .that the bill of exceptions was signed and allowed in the absence of and without notice (so far as each .knows,) to the defendant, or defendant's counsel; that the bill purports to contain all the evidence, when in fact it does not contain all the evidence; that it represents that certain matters were introduced in evidence which in fact were not introduced in evidence; and that it represents the evidence concerning certain matters to have been a certain way, when in truth and in fact the evidence was directly the reverse of what it represents it to have been. These things are stated in full, and in detail, in the affidavits. We have only attempted to state the sub-stance of the affidavits. It would seem that there ought to be a remedy for such a case as this. And we think there is; but it is not the remedy the defendant wants. It is admitted by counsel for defendant that the time has passed in which the court below could, unless assisted by the supreme court,.

2. Where original bill is erroneous, it cannot be sent back for correction. allow a new bill of exceptions, or amend the one already allowed. But it is claimed that this court could by an order enable the court below to so amend the bill of exceptions as to make it correspond with the facts, as they transpired at the trial. We know of no law authorizing the supreme court to make any such order. It is true, that we can send back a transcript with the order that it be so amended as to correspond with the original record. It is true, that we can order that the transcript of the bill of exceptions be so amended as to correspond with the original bill of exceptions. But we have no power, so far as we are now advised, to order that the original bill of

exceptions shall be so amended as to correspond with the facts of the case. This is entirely unlike the case where a bill of exceptions is presented to the court within the proper time, and the court refuses to allow it, or to act upon it. In that case the law gives a remedy which may be enforced in this court. (Article 33 of the code.) As soon as the judge refuses to act upon the bill of exceptions an action accrues against him—an action of mandamus; and the mere adjournment of court in such a case cannot defeat or bar the action. The action continues until the judge performs his duty, or until the statute of limitations bars it. But no action accrues against a judge when he acts upon a bill of exceptions, and acts judicially, although he may act erroneously. Where a party obtains a bill of exceptions through fraud, the other party would undoubtedly have a remedy by an original action in the district court (but not in this court) if he were likely to suffer injury from the fraud. And, generally, where a bill of exceptions is so erroneous or untrue as to require a reversal of the judgment, the party aggrieved has a new trial in the court below, which ordinarily would be a sufficient remedy. And here we would wish to say that we confine this decision to cases where a new trial may be granted, without expressing any opinion concerning a case where a new trial could not be granted. The motion is overruled.

II. It is claimed that the court erred in overruling the plaintiff's demurrer to the defendant's answer. The answer states among other things that the defendant contemplated building its road on one of two different routes—the Tar Creek route, and the Baxter Springs route; that it would cost about $100,000 more to build, and about $20,000 more, annually, to operate, the Baxter Springs route than it would the Tar Creek route; that in consideration thereof the plaintiff entered into a contract with the defendant (many other persons making similar contracts with the defendant,) to convey the land in controversy to the defendant, if the defendant would build its road on the Baxter Springs route and locate

its depot in Baxter Springs; that the defendant had performed all its part of the contract; and then the answer prays that the plaintiff may be compelled to specifically perform his part of the contract by conveying said land to the defendant. Upon this answer the following questions are raised: *First:* Can a railway company receive, or purchase, and hold real estate for the purpose of aiding it "in the construction, maintenance and accommodation of its railway?" We think it can. (Gen. Stat., 202, § 4, subdiv. 2.) Of course, railway companies cannot become the owners of lands for mere purposes of speculation. Of course they cannot own lands for the purpose of operating farms on them, or own houses and lots for the purpose of renting them; nor can they engage in any kind of business not connected with legitimate railroad business. But they may receive lands by voluntary grant, or purchase, and then sell them "for the purpose of aiding in the construction, maintenance, and accommodation of their railways." The statute above referred to provides that every railway corporation, in addition to its other powers shall have power "To take and hold such voluntary grants of real estate, and other property, as shall be made to it to aid in the construction, maintenance and accommodation of its railway; but the real estate received by voluntary grant, shall be held and used for the purpose of such grant only; and to purchase and hold, with power to convey, real estate for the purpose of aiding in the construction, maintenance, and accommodation of its railway." *Secondly:* Does it appear from this answer that the object of the railway company in making said contract was to obtain the land for the purpose of aiding it in the construction, maintenance or accommodation of its railway? We think it does, though it is not so expressly stated. It would have been better if the answer had so stated the same in express terms. *Third:* Was this contract in contravention of public policy, and void, because it was made in consideration that the railway company would build its road by way of Baxter Springs

*3. Voluntary grant or donation to railroad companies, when valid.*

*4. Donations to secure road over a particular route not void.*

instead of by way of Tar Creek at such a vastly increased expense? We think not. There is no kind of public policy that requires that railroads shall be built on the route that costs the least. The public interests often require that a railroad shall be built on the route that costs the most. The cost of constructing or maintaining a road is only one of the many elements that must be taken into consideration in determining on what route a road shall be built. The prospective business of a road proposed to be built upon any particular route has vastly more to do with the question of where it shall be located, than the cost of its construction or operation. It is not claimed in this case that the interests of the public were not best subserved by constructing the road by way of Baxter Springs instead of by any other route. The running of the road by way of Baxter Springs was not a deviation of the road from any route mentioned in the charter, nor was it even a deviation from any route between two points mentioned in the charter. It is said "that the objective point of the road was and is Preston, in the state of Texas." The running of the road to Baxter Springs was simply a choice of routes to Preston, Texas. But as Preston is beyond the boundaries of Kansas, and as no railroad company can be chartered in Kansas with power to build a railroad beyond its boundaries, the location of Preston, or the choice of routes to it, can have no bearing in this case. The question, then, was simply this: whether the railroad company would build a road to Baxter Springs or to Tar Creek; simply, whether they would build one road or some other road, or perhaps more properly speaking, whether they would build a road to Baxter Springs, or not. With this view of the case, the decision of the first question raised on the demurrer to the answer, and one which we have already considered, decides this question. And this, we think, is all there is of the question. Hence our answer, that a railway company *can* become the owner of real estate, and hold it for the purpose of aiding it in the construction, maintenance, or accommodation of its railway, is an answer to this

question. For the exercise of this power the railway company has a positive statute in its favor, and we need not look any further for authority. The decisions of other states, whether they agree with these views or not, have no application to this case, unless such states have statutes like ours.

III. There are many questions raised upon the introduction of the evidence, or rather upon the exclusion of evidence. From the bill of exceptions it would seem that much of the evidence of the plaintiff that was excluded should have been admitted. The following evidence that was excluded seems to have been competent, and should have been admitted, to wit: Evidence tending to show the circumstances under which the bond from the plaintiff to the defendant was signed; whether at the time it was signed it formed a part of a completed contract, or whether it only served as the basis of a proposition to the railroad company; whether the bond was ever delivered by the plaintiff to the railroad company, or not; whether, if the bond served only as the basis of a proposition, the proposition was ever accepted, or not, by the railroad company, or whether it was rejected by the railroad company; and the length of time, if any, that was given to the railroad company in which to determine whether it would accept or reject the proposition, etc. And the objection to the introduction of Mr. Joy's letter in evidence, to wit, "that it had not been received in the ordinary way," was entirely insufficient. If the letter was an answer to the proposition of the plaintiff and others, as it seems from the bill of exceptions to be, and if it was promulgated as such by a duly authorized agent of the railroad company, it made no difference how it was received, whether by mail or otherwise. For the errors of the court, in excluding said evidence, the judgment below must be reversed. But as the bill of exceptions is probably not true in many of its statements we shall not comment upon the evidence in detail, for by so doing we would probably be commenting upon a very different case from the one that was

*5. Evidence; material, competent; error to exclude.*

actually tried in the court below. Judgment reversed and cause remanded for a new trial.

All the Justices concur, except as to the second point decided; and concerning that point KINGMAN, C. J., concurs with VALENTINE, J., and BREWER, J., dissents.