## Cobb v. Wm. Kenefick Co.

No. 923, Ind. T. Opinion Filed March 9, 1909.

(100 Pac. 545.)

1. **PLEADING—Judgment on the Pleadings.** A motion for a judgment on the pleadings is a common and permissible practice, but, in a case where filed by the plaintiff to a defendant's answer, it should be granted only when such answer, allowing every reasonable intendment in its favor, does not deny or state a defense to the material allegations of the petition.

2. **CONTRACTS—Legality of Object—Breach of Trust—Railroad Bonus.** In an action by a railroad construction company to recover on a note given it as a bonus to induce it to build the line of road it was engaged in constructing for a railroad company to a certain town, it is error to render judgment on the pleadings, where the answer alleges that the construction company was the agent of the railroad company for the construction of the road, and was employed to construct the same on a certain survey, but for the consideration of the bonus sued on moving to it it agreed to and did construct the same off said survey and to said town.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory, at Muskogee.*

Action by the William Kenefick Company against S. S. Cobb and others. Judgment for plaintiff against defendant Cobb, and he appeals. Reversed.

*Charles G. Watts* and *DeRoos Bailey,* for appellant, cited and discussed: *Woodstock Iron Co. v. Richmond & D. Extension Co.,* 129 U. S. 643; *Fuller v. Dane,* 18 Pick. 472; *Enid Right of Way & T. Co. v. Lile* (Okla.) 82 Pac. 810; *McGuffin v. Coyle & Guss,* 16 Okla. 648; *Elkhart County Lodge et al v. Crary,* 98 Ind. 238.

*Baker & Pursel,* for appellee.

DUNN, J.  This action was begun in the United States Court for the Western District of the Indian Territory, at Muskogee, by the Wm. Kenefick Company, defendant in error, against S. S. Cobb, City National Bank of Wagoner, Ind. T., First National Bank of Wagoner, Ind. T., W. B. Kane, and J. W. Wallace, to enforce payment of two notes given by S. S. Cobb to the said company to cover a subscription made by him to secure the construction of a railroad to the city of Wagoner under the terms and conditions as shown by the pleadings. A demurrer to the liability charged against the other parties named who signed the notes was sustained by the court, from which no appeal was prosecuted. Hence they are eliminated from the case, and we have but to deal with the controversy existing between the appellant Cobb and the appellee. On the filing of the amended answer, plaintiff filed a motion for judgment on the pleadings, which was sustained by the court, from which appeal was prosecuted to the United States Court of Appeals of the Indian Territory, and the case now comes to us for review by virtue of our succession to that court.

In view of the fact that the determination requires a consideration of the pleadings, and they alone, we set out the material parts thereof at length. Plaintiff averred in its complaint: That it was a corporation organized under the laws of the United States in force in the Indian Territory for the purpose of and with the

authority to engage in the construction and operation of railroads in the Indian Territory and elsewhere.

"That prior to the 5th day of May, A. D. 1904, it commenced the construction of a standard gauge railroad extending from a connection with the line of the Muskogee Union Railway in the northwesterly portion of the city of Muskogee, Creek Nation, Ind. T., and running thence in a general southwesterly direction to where the main line of said railway crosses the Red river in the state of Texas, an estimated distance of 181 miles, more or less.

"Plaintiff further says: That prior to the 5th day of May, A. D. 1904, the Muskogee Union Railway Company, a corporation, had constructed a standard gauge single-track railroad from the city of Muskogee to Correta Station, a station on the St. Louis & Iron Mountain Railroad, about 9 miles north from said city of Muskogee, intersecting and crossing said St. Louis & Iron Mountain Railroad at said Correta Station. That after the construction of said railroad from said Correta Station to Muskogee, the name of said Muskogee Union Railway was changed to the Missouri, Oklahoma & Gulf Railway, and that said portion of said railway from Muskogee to Correta Station aforesaid was fully constructed and trains operated thereon prior to the 1st day of February, A. D. 1905. That prior to the 1st day of February, A. D. 1905, the plaintiff had contracted for the construction of said Missouri, Oklahoma & Gulf Railway from the northwesterly part of the city of Muskogee in a southwesterly direction to the town of Dustin, a station on the Ft. Smith & Western Railroad in the Creek Nation, Ind. T. Plaintiff further says: That it was not its intention nor was it the intention of the said Missouri, Oklahoma & Gulf Railway Company to construct a railway northerly from said Correta Station in and through the town of Wagoner in the Western district of the Indian Territory, but that only for the purpose of ascertaining whether or not a straight line low-grade railway could be constructed from said Correta Station to the town of Afton, a town located on the St. Louis & San Francisco Railroad in the Cherokee Nation, Ind. T., and for that purpose had made a preliminary survey from said Correta Station to said town of Afton, which survey was made on as straight a line and on as low a grade as was possible and practicable, and that said survey ran some distance east of the town of Wagoner. That on and before the 1st day of February, A. D. 1905, there was fully constructed and in operation through the city of Muskogee

and the town or city of Wagoner the Missouri, Kansas & Texas Railway, which was crossed at Muskogee by the Missouri, Oklahoma & Gulf Railway, and there was fully constructed and in operation at the town or city of Wagoner, in addition to the Missouri, Kansas & Texas Railway, the St. Louis & Iron Mountain Railway, which last-named railway is crossed by the Missouri, Oklahoma & Gulf Railway at Correta Station. Plaintiff further says that some time after the preliminary survey was made from said Correta Station to Afton, and prior to the 1st day of February, A. D. 1905, the citizens and property owners of the town or city of Wagoner in the Creek Nation, Ind. T., including the defendants herein and each and all of them, by and through a committee appointed by said citizens and property owners of Wagoner, including the defendants herein and each and all of them, said committee being composed of defendant W. B. Kane, W. I. Nicholson, and A. F. Parkinson, on or about the 2d day of February, A. D. 1905, called at the office of the plaintiff in room No. 618, Bryant building, in Kansas City, Mo., and then and there made to the plaintiff, for the purpose of inducing the plaintiff to construct a steam railroad from said Correta Station to said town or city of Wagoner, a written proposition which is in words and figures as follows, to wit: 'Wagoner, I. T., Feb. 2, 1905. Mr. Wm. Kenefick, Pres., 618 Bryant Bldg., Kansas City, Mo.—My Dear Sir: The undersigned, a committee appointed by the citizens of Wagoner, I. T., to submit to you a proposition for the construction of a railroad from Wagoner to Correta, and northeast from Wagoner, make the following offer: The citizens of Wagoner will pay to your company a cash bonus of $25,000.00, a real estate bonus of $25,000.00 and a right of way bonus from Correta to the north city limits of Wagoner. One-half (1/2) of cash bonus to be paid to you, or your representative, thirty (30) days after passenger and freight trains are being run into the city of Wagoner. One-half (1/2) four months after said trains are being run into the city of Wagoner. One-half (1/2) real estate bonus to be conveyed to you thirty (30) days after passenger and freight trains are being run into the city of Wagoner, and one-half (1/2) four months after said trains are being run into the city of Wagoner. The deed of right of way in Wagoner to be obtained and furnished to you in time to permit of the construction of the road. The right of way outside of the city limits to be obtained by your company and paid for by the citizens of Wagoner. The terms of

this proposition to be carried out and all papers placed in escrow fifteen (15) days after acceptance of this offer by you. Yours respectfully, [Signed] W. B. Kane, W. I. Nicholson, A. F. Parkinson, Committee.'

"Plaintiff further says: That, up to the time the said committee made the proposition hereinabove set forth to this plaintiff, the plaintiff had not intended to build a railroad of any kind to said town or city of Wagoner, and had done nothing toward the construction of a railroad northerly from said Correta Station, except to make a preliminary survey aforesaid. That after the visit of the said committee aforesaid and the making of the proposition by said committee as aforesaid, the plaintiff immediately investigated the feasibility or otherwise of constructing a standard gauge steam railway from said Correta Station to the town or city of Wagoner, and thence northerly to the town of Afton, and the plaintiff after being advised by its engineers and officials that a line of railway could be constructed to Afton by way of Wagoner, but that the cost of constructing such a line to Afton by way of Wagoner would be greater than the cost of constructing the same kind of a line of railway from said Correta Station to Afton on the route surveyed by the plaintiff, which ran some distance east of the town or city of ·Wagoner aforesaid, but that taking into consideration the benefits to be derived by plaintiff from the carrying out and fulfillment of the proposition made by the citizens of Wagoner as aforesaid, the railroad could be built by way of Wagoner to Afton without loss to the plaintiff or the Missouri, Oklahoma & Gulf Railway, but plaintiff says that in the absence of and independent of the benefits to be derived from the aid, assistance, and subsidy offered and proposed by said citizens of the town or city of Wagoner, through said committee and these defendants and each and all of them, the cost of constructing said railroad to said town of Afton by way of Wagoner would have been greater and in excess of the cost of constructing the same kind of railroad from said Correta Station to said town of Afton by the route covered by preliminary survey as aforesaid, and that said difference in cost would amount to the sum of about $50,000.

"Plaintiff further says: That after a careful consideration of the proposition made by said committee for and in behalf of the citizens and property owners of said town or city of Wagoner, and these defendants and each and all of them, made to said citizens and property owners aforesaid by and through their said

committee aforesaid, a counter proposition in words and figures as follows, to wit: 'Kansas City, Mo., Feb. 4, 1905. W. B. Kane, W. I. Nicholson, and A. F. Parkinson, Committee, Wagoner, I. T: Gentlemen: I have your proposition of Feb. 2, 1905, and after carefully considering the same I cannot accept it, but if you will make the following modifications, I will consider it: Cash bonus, $35,000.00. Real estate bonus, $25,000.00. And a right of way 100 feet wide from Correta, Ind. Ter., to the city of Wagoner and the right of way through the city of Wagoner to the north boundary line to be agreed upon. Also in addition to this, sufficient grounds for depot in the city of Wagoner, not to exceed two acres, to be agreed upon. Also in addition, grounds for yards, the location to be selected by the chief engineer of our company, adjoining the right of way 100 feet wide by 3,000 feet long. All deeds to the right of way, depot and station grounds to be furnished the Missouri, Oklahoma & Gulf Railway within 60 days from the date of the acceptance of this proposition. The real estate to be valued by a committee; one member to be selected by me, and one member selected by you, and in case they fail to agree they may select a third party. The deeds together with an abstract of title to be approved by our attorney to be deposited in escrow with some trustee selected by said committee and to be delivered at the time the schedule trains are running into the city of Wagoner. The cash bonus of $35,000.00 to be paid as follows: One-half thirty days after schedule trains are run into the city of Wagoner and one-half three months after schedule trains are running into the city of Wagoner. We will require these notes to be in the form hereto attached, and must be secured by a first mortgage on real estate of double the value to be approved by above committee or guaranteed by good and solvent banks and delivered to us. You are to signify your acceptance or rejection of this proposition within five days from this date. If accepted we will give you ten days in which to obtain the deeds and the subsidy and a bond to be approved by us for right of way, depot and station grounds, as herein set forth. Very truly yours, Wm. Kenefick.' That said counter proposition was made by the plaintiff in all respects in good faith, and not with the hope or expectation of gain or profit for either the plaintiff or the Missouri, Oklahoma & Gulf Railway Company, but the plaintiff believing that said railway could, with the aid of the bonus or subsidy agreed to be raised, paid, and furnished by the citizens and

property owners and these defendants aforesaid, be built without loss, gain or disadvantage to the plaintiff and said last-named railway company, and that the construction and operation of said railway into said town of Wagoner would result in equal mutual benefit to the plaintiff, said town of Wagoner, and said last-named railway company.

"Plaintiff further says that the said citizens and property owners of said town of Wagoner, including these defendants and each of them, accepted said counter proposition of the plaintiff aforesaid, set out in paragraph 7 of this complaint, and the plaintiff taking into consideration the promise and agreement of the said citizens and property owners and these defendants aforesaid to raise and pay the bonus in cash and real estate as set forth in said accepted counter proposition aforesaid, and relying thereon, the plaintiff, after first obtaining the consent of said last-named railway company therefor, began the construction of said steam railway from said Correta Station to said town or city of Wagoner, and fully completed the same on the 21st day of September, A. D. 1905, on which last-named date plaintiff began the running of daily scheduled passenger and freight trains on said railway from said town of Wagoner to the said town of Dustin, said railway connecting said railroad at Dustin with the Ft. Smith & Western Railway, and plaintiff has operated said daily scheduled passenger and freight trains on said railway continuously between said towns of Wagoner and Dustin since said 21st day of September, A. D. 1905, and now so operates the same. Plaintiff further says that if said citizens and property owners of Wagoner and these defendants and each of them had not accepted said counter proposition aforesaid, and had not agreed to pay the sum of $500 with interest thereon sued upon in this action, and said citizens and property owners of said town of Wagoner had not agreed to pay the amount of bonus, subsidy, and aid for the construction of said railroad as set forth in said counter proposition accepted as aforesaid, the plaintiff would not have built said railway to said town of Wagoner as aforesaid, for the reason that without the benefits and advantages inuring to the plaintiff and the said Missouri, Oklahoma & Gulf Railway resulting from the carrying out in good faith of the terms and conditions of said counter proposition by said citizens and property owners and each and all of these defendants, it would have been just as well and just as beneficial, if not more so, to the plaintiff and said Missouri,

Oklahoma & Gulf Railway Company to have built said railway to the town of Afton on the preliminary route or survey running some distance east of said town of Wagoner. Plaintiff further says that it constructed said railway from said Coretta Station to the town or city of Wagoner with its own funds and means, which plaintiff would not have done if said citizens and property owners of Wagoner and these defendants and each and all of them had not promised and agreed to give the plaintiff and said Missouri, Oklahoma & Gulf Railway Company the benefits resulting from the carrying out fully, performing, and complying with the terms and conditions of said counter proposition as aforesaid.

"Plaintiff further says that, after said proposition aforesaid was accepted, the citizens and property owners of said town or city of Wagoner, including the defendants herein and each and all of them, at once began through the committee aforesaid to actually raise the said aid, assistance, and subsidy in accordance with the terms and conditions of said accepted counter proposition, and for the purpose of raising said aid, assistance, and subsidy, and for the express purpose of inducing the plaintiff to construct a railroad from said Correta Station to Wagoner, aforesaid, the defendant S. S. Cobb agreed to pay the plaintiff the sum of $500 toward raising the so-called cash part of the aid, assistance and subsidy aforesaid, and, for the purpose of evidencing same in writing, executed and delivered to the plaintiff on the 14th day of March, A. D. 1905, the two paper writings with indorsements thereon, which are in words and figures as follows, to wit: '$250.00. 134. Wagoner, I. T., March 14, 1905. In consideration of the benefits to be derived from the construction of the Missouri, Oklahoma & Gulf Railway, into the city of Wagoner, Indian Territory, by the Wm. Kenefick Company, we promise to pay to the Wm. Kenefick Company, its successors or assigns, thirty (30) days after schedule trains are run into said city of Wagoner, Indian Territory, the sum of two hundred and fifty ($250.00) dollars, for value received, with interest at the rate of eight (8) per cent. per annum from maturity until paid. S. S. Cobb.' "

A second note of the same date, for the same amount, and which is likewise past due and sued on, was also executed and appeared in the complaint at this point.

"Plaintiff further says that it commenced actual operation of schedule daily freight and passenger trains on said Missouri, Oklahoma & Gulf Railway between said town of Wagoner and said

town of Dustin on the 21st day of September, A. D. 1905, and by reason thereof said sum of $500 aforesaid promised to be paid by said defendants and each and all of them as aforesaid became due and payable, $250, thereof on the 21st day of October, A. D. 1905, and the other sum of $250 on the 21st day of December, A. D. 1905, with interest thereon at the rate of 8 per cent. per annum as aforesaid, and that the plaintiff is now the legal owner and holder of the said two paper writings, and that no part thereof has been paid, although the plaintiff has often requested and demanded payment of same from said defendants and each of them. Plaintiff further says that, at the time of the making of said two paper writings aforesaid, the defendants and each and all of them were the owners of a large amount of real and personal property in said town or city of Wagoner, all of which would be and were largely increased in value by the construction of said railroad into said town or city of Wagoner. Plaintiff further says that it has in all respects and in every particular carried out and performed at its own expense and with its own means every and all the terms and conditions to be by plaintiff performed in or about the construction and operation of said railway in accordance with the proposition made by it to said citizens and property owners of Wagoner, I. T., and these defendants and each and all of them, as provided and stipulated by the proposition made by this plaintiff and accepted by said citizens and property owners of Wagoner and these defendants."

The defendant S. S. Cobb filed the following as his separate amended answer to the said complaint:

"Comes the defendant S. S. Cobb, and for his amended answer to the complaint of the plaintiff admits that plaintiff is, and has been since the time mentioned in its complaint, a corporation, organized under the laws of the United States in force in the Indian Territory. He admits that after the construction of the Muskogee Union Railroad from Muskogee to Correta Station the name of Muskogee Union Railway Company was changed to the Missouri, Oklahoma & Gulf Railway Company. He admits that the said Missouri, Oklahoma & Gulf Railway Company made a preliminary survey of a line of road from said Correta Station to the town of Afton, I. T., in the Cherokee Nation, and that the nearest and most direct line from said Correta Station to the town of Afton, as shown by said survey, left the said town of Wagoner west of said line several miles. He admits that

it would cost more to build said line of road from Correta Sta-- tion to Afton by way of Wagoner than it would to build it in a direct line as surveyed by said company, and he states that he has no knowledge or information sufficient to form a belief as to whether, taking into consideration the benefits to be derived by plaintiff and the Missouri, Oklahoma & Gulf Railway Company from running said line by Wagoner, said line could be constructed without loss to the plaintiff or the Missouri, Oklahoma & Gulf Railway Company, and that he has no knowledge or information sufficient to form a belief as to whether the plaintiff constructed said road from Correta Station to the town of Wagoner after first obtaining the consent of the said Missouri, Oklahoma & Gulf Railway Company. Defendant admits that it was not the intention originally of the Missouri, Oklahoma & Gulf Railway Company to construct a railway from Correta Station to Afton by way of Wagoner, but avers the truth to be that it was the intention of said company to construct a line of railway from Correta Station to Afton, I. T., by the nearest and most direct route which would have left Wagoner several miles west of said line according to said survey, and he avers the truth to be that the plan of constructing said road to Afton by way of Wagoner was made by the plaintiff and the said Wm. Kenefick in order that they might reap the benefits of the bonus promised by the defendants and others. Defendant admits that the counter proposition mentioned in said complaint as having been made by plaintiff to said citizens' committee was not made with the hope or expectation of gain or profit for the Missouri, Oklahoma & Gulf Railway Company, but he denies the statement that it was not made with the hope of gain and profit to the plaintiff or the said Wm. Kenefick.

"Defendant states that he had no knowledge or information sufficient to form a belief as to whether said road was constructed by plaintiff out of its own funds. He admits that he signed the notes or writings sued on, and admits that plaintiff is the owner and holder thereof. He states that the plaintiff in constructing said road from Correta Station to Wagoner was acting as the agent of said Missouri, Oklahoma & Gulf Railway Company, which then was, and now is, a corporation, its line of road from Musko- gee to Correta Station and now from Muskogee to Wagoner in said territory, and he avers that the plaintiff was employed by said company to construct said road according to said survey. He states that, before the proposition and counter proposition men-

tioned in the complaint of the plaintiff were made, plaintiff by its officers and agents came to the defendant and other citizens of said town of Wagoner, which is and then was a city of about 4,000 inhabitants, and represented to him and to them that, unless the citizens would contribute money, land, right of way, and depot grounds to plaintiff, plaintiff would construct said road so as to leave the said city of Wagoner a distance of several miles and thereby injure the business of said city and its citizens, and that in consequence of said representations the proposition mentioned in said complaint was made, and that in consequence of said representations defendant signed said contracts and agreed to pay the amounts therein stated; and he further states that but for these representations he would not have signed said contracts. He further states that Wm. Kenefick, who made the counter proposition mentioned in said complaint, is and then was a holder and director in and president of the Wm. Kenefick Company, the plaintiff herein, and is and then was a stockholder and director in the said Missouri, Oklahoma & Gulf Railway Company. Defendant therefore states that said contracts were contrary to public policy and void."

As a preliminary question, counsel for appellant in their brief contend that such a motion as was filed by appellee, for judgment on the pleadings, is unknown to our Code. While this is, strictly speaking, true, yet the practice is well established by the procedure adopted in the courts and meets nearly, if not quite, uniform approval. Black on Judgments, vol. 1, § 15; Ency. Pleading & Practice, vol. 11, pp. 1044, 1045; *Hutchison v. Myers,* 52 Kan. 290, 34 Pac. 742.

In the case of *Hutchison v. Myers, supra,* Justice Johnston in the consideration thereof, speaking of the motion for judgment on the pleadings, has this to say:

"Complaint is next made of the action of the court in entertaining a motion for judgment upon the pleadings, and in allowing judgment against Hutchison without testimony. The motion for judgment on the pleadings was equivalent to a demurrer to Hutchison's answer, and is a common and permissible practice. If the averments of the petition were sufficient, and the answer did not allege a defense, and no amendment was asked for or allowed, plaintiff was certainly entitled to a judgment."

The general rule is stated in 23 Cyc. 769, as follows:

"This is a form of judgment not infrequently used in practice under the reformed Codes of Procedure. It is rendered on motion of plaintiff, when the answer admits or leaves undenied all the material facts stated in the complaint; but such a judgment cannot be given where the pleadings of defendant set up a substantial and issuable defense or where the suit is for unliquidated damages and the answer states matters in mitigation."

And, say the authorities, in the consideration thereof, "the pleadings objected to as insufficient will be liberally construed, and the motion will be denied, where there is any reasonable doubt as to their insufficiency." 11 Ency. of Pleading & Practice, 1047; *McAllister v. Welker*, 39 Minn. 535, 41 N. W. 107; *Kelley v. Rogers*, 21 Minn. 146; *Giles Lithographic & Liberty Printing Company v. Recamier Manufacturing Company*, 14 Daly (N. Y.) 475. In the case of *Malone et al. v. Minnesota Stone Company*, 36 Minn. 325, 31 N. W. 170, the court in the syllabus says: "Upon such motion every reasonable intendment is in favor of the sufficiency of the pleading objected to."

Now with this rule, requiring, as we have seen, the liberal construction of the answer filed in the case, the question arises: Does the complaint and the answer, taken together, considering those portions of the former admitted or undenied, in conjunction with the averments of the answer, leave the case in such a situation and present such a statement of facts as will justify an affirmance of this judgment? This question will necessitate an analysis of the pleadings filed, to the end that we may ascertain the precise facts shown thereby. If the complaint states a cause of action which is undenied by the answer, and there is no new matter pleaded in the answer under the rule above noticed, sufficient to deny plaintiff the right to the relief demanded, then the judgment should be sustained; otherwise it should be reversed.

Considering then the complaint in conjunction with the answer, we find before us substantially the following facts: It is admitted: That plaintiff is a corporation, organized and existing for the purpose and with authority to engage in the construction

and operation of railroads in the Indian Territory, and that the Missouri, Oklahoma & Gulf Railway Company had in operation, at the beginning of the negotiations out of which this controversy arose, a railroad from Muskogee to Correta Station, from which point said company had made a preliminary survey of a line of road to the town of Afton, which left the town of Wagoner west of said survey several miles. That it was not the intention of the plaintiff or of said railway company to construct a railway northerly from said station into or through the town of Wagoner, but that it was the intention of said railway company to construct a line of railway upon the said survey, and that the plan of constructing said road by the way of Wagoner was made by plaintiff in order that it and William Kenefick, its president, who was also a stockholder and director in said railway company, might reap the benefits of the bonus promised by the defendant and others in order to induce the building of the said railway to the city of Wagoner. It is also admitted: That the cost of constructing the said road by the way of Wagoner would be in excess of the cost of its construction on the line surveyed, but that, taking into consideration the benefits to be derived from the payment of the bonus promised, plaintiff could build the said road to Wagoner without loss to it or the railway company, and that except for these benefits the excess cost would be about $50,000. That the counter proposition made by William Kenefick for the plaintiff was not made with the expectation of gain by the railway company, but was made with the hope of gain and profit to the plaintiff and its president, William Kenefick, and that plaintiff after the defendant had agreed to pay the bonus as provided, and relying thereon, after first securing the consent of the railway company, constructed the railroad to the town of Wagoner in all particulars in keeping with the agreement. That the construction was made with its own funds, and that the note sued on herein belongs to and is the property of plaintiff. The defendant in his answer then states affirmatively that the plaintiff in constructing said road was acting as the agent of the Missouri, Oklahoma &

Gulf Railway Company, and was employed by said railway company to construct said railroad according to the survey above referred to.

From the foregoing conclusions of fact to be drawn from the averments of the complaint, taken in connection with the admissions of the answer and the direct allegations contained therein, it is clear that the bonus promised by tne citizens of Wagoner was for the benefit of plaintiff or its president, William Kenefick, or both. Notwithstanding this situation, however, counsel's argument and insistence for plaintiff is that it was not improper or illegal for a railroad company to accept gratuities and assistance to aid in the construction of its line of road, although the location of the road itself was made dependent thereon. In so doing they endeavor to ignore the actual material issue of the case, which is: May an agent accept and enforce for his own benefit subscriptions which are made in consideration of his deflecting the location of the railroad he is building for his principal. Railroads are generally termed "public" or "quasi public," highways, and the corporations engaged in their construction and location, by virtue of the advantages yielded to them by the state, are held to the duty of locating and constructing the same where they will best serve the public interests, and some of the decisions of the courts have held that a contract for a consideration with a railway company to locate its line of road to a certain place or on a given route was against public policy and void because of the fact that it tended to improperly influence the company in the exercise of that impartial judgment necessary to be controlling to properly serve the public. *Pacific Railroad Company v. Seely et al.,* 45 Mo.212, 100 Am. Dec. 369; *Burney's Heirs v. Ludeling et al.,* 47 La. Ann. 73, 16 South. 507; *Indiana North & South Railway Company v. City of Attica,* 56 Ind. 476; *Pueblo & Arkansas Valley Railroad Company v. Taylor et al.,* 6 Colo. 1, 45 Am. Rep. 512; *Mobile & Ohio Railroad Company v. People of State of Illinois,* 132 Ill. 559, 24 N. E. 643, 22 Am. St. Rep. 556.

From this holding, however, many of the courts, and in our judgment with the better reasoning, have departed, and all will, we believe, soon adopt the view expressed by the case here cited. That which appears to us to be the correct doctrine and the one controlling in this case is stated by Judge Amidon in the case of *Farrington v. Stucky, Trustee, et al.,* 165 Fed. 327, decided by the United States Court of Appeals, Eighth Circuit, September, 1908, wherein he said:

"It is now too late to hold that an agreement for the payment of a bonus to a railroad company to secure the construction of its line along a given route is void as against public policy. That has been one of the conspicuous features of American railroad building. The Legislatures in nearly every state in the Union have authorized counties, cities, and other municipal bodies to issue bonds in aid of such enterprises. The conflict and strife of different communities to gain the location of the road in their midst has been a large factor in the building of every important railway line. After Legislatures have authorized the issuing of municipal bonds, and the exercise of the power of taxation, so as to compel every property owner in the community to contribute to these bounties, it would be wholly unwarrantable for the courts to declare that voluntary contributions made by citizens are void as against public policy. The courts as a rule are to get their notions of public policy from the legislative department; and when that department, by a long course of legislation, has indicated its views of what constitutes sound public policy on any subject, the courts cannot set up another standard."

This view seems to be well supported by the authorities, of which we note the following: *McClure v. Missouri River, F. S. & G. R. Co.,* 9 Kan. 373; *Cumberland Valley Railroad Company v. Baab,* 9 Watts (Pa.) 458, 36 Am. Dec. 132; *Berryman v. Trustees of Cincinnati Southern Railway,* 14 Bush (Ky.) 755; *Racine County Bank v. Ayers,* 12 Wis. 512; *First National Bank of Cedar Rapids v. Hendrie,* 49 Iowa, 402, 31 Am. Rep. 153; *Farrington v. Stuckey, Trustee, et al.* (Ind. T.) 104 S. W. 647; *Piper v. Choctaw Northern Townsite & Improvement Company,* 16 Okla. 436, 85 Pac. 965; *Cooper v. Ft. Smith & Western Railway Company, ante,* p. 139, 99 Pac. 785.

The pleaded facts in our judgment will not permit us to place plaintiff in the catagory of the cases just noted, but requires, as we have seen, the application of the doctrine pertaining to a construction company which, as an agent of a railway company engaged to build its road, makes an independent contract to locate it on a line for a consideration moving to the agent. Can it enforce such a contract? We think not.

A discussion and consideration of the federal case to which reference is made above, taken in connection with the authorities cited and approved by it, together with the opinion of the United States Court of Appeals of the Indian Territory, from whence it came, in our judgment will be sufficient on which to base the opinion in this case. The case from the Indian Territory referred to, *Farrington v. Stuckey, Trustee, et al., supra,* was one wherein Farrington appealed from a judgment of the United States Court for the Western District of the Indian Territory, sustaining a demurrer to his complaint, in which he alleged: That the William Kenefick Company was engaged in constructing a railroad southwesterly from Muskogee, Ind. T., and that on the 18th day of November, 1904, the plaintiff executed and delivered to certain persons, as trustees, two notes aggregating $500, the consideration of which was to secure the building of the railroad in and through the town of Henryetta. That to secure the payment of said notes, plaintiff executed to the said trustees a deed of trust to certain lots authorizing them or their successors, on the failure of the maker of the said notes to pay the same when due, to sell the premises at public auction to the highest bidder for cash. That the said Farrington, along with a number of other citizens, executed notes and deeds of trust to the said trustees in the aggregate sum of $20,000, for the purpose of securing said railroad which was known as the Missouri, Oklahoma & Gulf Railroad. That the trustees, to whom the said notes and trust deeds were delivered, assigned the same to William Kenefick under a contract, which recited that, in and for the consideration of the benefit to be derived by the railroad to be constructed by the William Kenefick

Company, in a southwesterly direction from Muskogee, Ind. T., and through the town of Henryetta, and whereas, various parties interested have executed their promissory notes secured by trust deeds payable to the orders of the parties of the first part, and to be by them used for the purpose of securing the building of said railroad into and through the town of Henryetta to the North fork south of Henryetta, etc. Plaintiff alleged: That it was further agreed that the contract should contain a provision to the effect that no depot or town site should ever be constructed or laid out between Henryetta and Dustin, Ind. T. That William Kenefick, trustee, who negotiated said agreement, and to whom the said notes and deed of trust were assigned, was at the time of the execution of the same, and at the time of their assignment by said trustees to him, a stockholder and director and the president of the Missouri, Oklahoma & Gulf Railroad. That the said railroad company was at that time a separate and distinct corporation, and in no wise connected with the Wm. Kenefick Company, except that some of the stockholders in the William Kenefick Company are also stockholders in the railroad company. That in causing said road to be built by way of Henryetta, it was necessary to deflect the same from its most natural and cheapest route a great number of miles, namely, four miles, at a great additional cost to the railroad company, viz., about $50,-000, and that by reason of these things the notes and mortgages executed were contrary to public policy and void. It was further alleged: That the said William Kenefick threatened the said plaintiff and those associated with him that did they not raise the said bonus, the said railway would not be built to Henryetta, but would be constructed along the line of the preliminary survey, four miles east thereof. That thereafter the said William Kenefick further assigned the said notes and deed of trust to W. L. Stuckey, who by virtue of the power of sale contained in the deed was threatening to sell the lots belonging to plaintiff. That he had posted notices in and about Henryetta to sell the same, and that, unless the sale of said property was restrained,

plaintiff would suffer great and irreparable injury. A temporary injunction was granted restraining the sale of the said property. A demurrer on the ground that the complaint did not states facts sufficient to state a cause of action was filed and sustained, from which holding plaintiff appealed to the United States Court of Appeals of the Indian Territory.

The similarity of the question involved in that case and the one at bar is apparent at a glance. The dissimilarity goes to the parties plaintiff and defendant, the manner in which the issue was presented, and the construction placed by the court upon the pleadings. In the case at bar it is the construction company suing to enforce payment of the bonus pledged, while in the case cited it is the maker of the notes evidencing the bonus enjoining enforcement of the payment sought by a sale of the property. The consideration given the case by the court is extended, and thorough; nearly, if not quite, all of the leading authorities touching the proposition involved in cases of this character being cited, considered, and reviewed. It will be noted that the complaint in that case leaves the question as to the exact relationship existing between the construction company and the railroad company, in the same uncertain condition as the complaint in the case at bar, but in that there is no statement such as is contained in this case in the answer of defendant, averring that the construction company was acting as the agent of the railroad company and employed by the said company to construct the road according to a certain survey. In this view of the pleadings in the case cited, the Court of Appeals, speaking through Mr. Justice Townsend, said:

"If the complaint had specifically alleged that this bonus was given to the stockholders or officers or agents of said company, for their own personal benefit, such a contract would have been illegal and void as against public policy."

In the case at bar it will be noted that it is specifically alleged in the complaint, and admitted by the answer, that the notes being sued on by the William Kenefick Company are owned and held by it, and it is alleged that the said company "was acting as

the agent of the said Missouri, Oklahoma & Gulf Railway Company"—thereby bringing the allegation and facts in this case squarely within the rule laid down in the case cited. The court in that case held that the bonus offered was not shown to be for the benefit of any one other than the railroad company so as to render the contract void. This case was taken on appeal to the United States Circuit Court of Appeals, and is the federal case *Farrington v. Stuckey, Trustee,* referred to, *supra.* The comment made upon the complaint by Judge Amidon is entirely applicable to the complaint in the case at bar, and is as follows:

"The complainant, however, bases his charge of illegality mainly upon the contention that the bonus was solicited and received, not for the railroad company, but for the construction company, or for Mr. Kenefick personally. The bill leaves us in doubt on this subject. * * * The bill is also obscure as to the relationship between the construction company and the railroad company. The only averment on that subject is that the former was 'engaged in locating and constructing' a railroad for the latter. Whether the construction company was an independent contractor, or a mere agent or employe of the railroad company in building the road, is not disclosed. Nor is it stated whether the compensation for the work was fixed at a price per mile, or on the basis of the actual expense of the enterprise."

Then, referring to the situation that would exist in view of the conditions and facts presented by the pleadings in this case, the court said:

"If William Kenefick was to receive the bonus either directly himself or indirectly through the construction company, we are equally clear that the transaction would be void as against public policy. An officer of a corporation, while acting on its behalf, will not be permitted to use his powers for his own personal enrichment. Neither will courts consider whether or not the corporation is in fact prejudiced by the transaction from which the officer gains a personal profit. It will not permit an agent to place himself in a position in which he is tempted to betray his trust for private gain. It is the tendency of such conduct, and not the actual injury of the corporation, which the law condemns."

The rule of law thus enunciated is as well settled as any other with which we have to deal. It is supported by the author-

ities from practically every court in the Union wherever the question has been presented. The principle underlying it is recognized and is stated in the case of *Woodstock Iron Company v. Richmond & Danville Extension Company,* 129 U. S. 643, 9 Sup. Ct. 402, 32 L. Ed. 819, which was likewise a case involving the construction of a railroad; a bonus being agreed upon whereby the Woodstock Iron Company was to pay the extension company a sum of money to induce it to construct the Georgia Pacific Railroad to the town of Anniston, which would deflect it from its route something like five miles. The Supreme Court of the United States, in refusing to require payment to the construction company of the bonus promised after the railroad was constructed as agreed, stated the rule underlying cases of this character as follows:

"It was a contract by an employe of a railroad company with a third party, for a consideration to be received from that third party, to violate its engagement with its employer in the important business of locating and constructing a railroad, and instead of selecting the shortest, cheapest, and most suitable route, to locate the road by a longer route, and thus impose an unnecessary and heavy burden upon its employer. The proposition of the iron company, which was accepted, was to pay the extension company for a breach of its duty. In plain language it was nothing less than the offer of a bribe to the latter company to be faithless to its engagements, and to do with reference to the business in which it was engaged what would amount to little less than robbery of its employer. The transaction on the part of the iron company was none the less offensive, because of the threats of the extension company, made by its vice president, who was also a director and stockholder of the railroad company, that, if the land and money mentioned were not donated, it would cause the road to be located away from Anniston by the rival town of Oxford. The threats did not excuse, much less justify, the offer."

In other words, the law does not and will not enforce a contract made with an agent under the terms of which he may be induced or tempted to depart from his legal and moral obligations to his principal or to betray the trust reposed for his own personal advantage. The courts will not sanction such a contract, even

where no wrongdoing is involved, and none shown in the particular transaction. Neither is evil intent or actual fraud necessary, for the contract will be void even if made in good faith and with honest intentions. It is as is cogently stated by Judge Amidon: "It is the tendency of such conduct, and not the actual injury of the corporation, which the law condemns." *McGuffin v. Coyle & Guss,* 16 Okla. 648, 85 Pac. 954, 86 Pac. 962, 6 L. R. A. (N. S.) 524; *Elkhart County Lodge et al. v. Crary,* 98 Ind. 238, 49 Am. Rep. 746.

"The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced." (*Hall v. Coppell,* 74 U. S. 542, 19 L. Ed. 244.)

From this it will be seen that we reverse the judgment of the lower court, but we desire to here observe the language of the Court of Appeals of the Indian Territory in the case of *Farrington v. Stucky, Trustee, et al., supra,* to which we again refer, wherein that court said:

"If this bonus was contributed to the William Kenefick Company, who were constructing this road, or the railroad company, in order to get a road constructed through the town of Henryetta, and the same was an open transaction, free from any corrupt purpose on the part of the stockholders, officers, or agents of said railroad company, and that in pursuance of said bonus so provided said road was constructed according to the terms of the contract, why should the same not be upheld and be a valid and binding contract upon appellant and other parties so contracting?"

And to the language of Judge Amidon in the same case in the federal court, wherein he said:

"If the construction company was a mere agency devised and employed by the railroad company for the construction of its line, and in soliciting and receiving the bonus the former was acting on behalf of the latter, we are clearly of the opinion that the transaction is valid."

In other words, as will be seen from the quotation just made if the evidence in this case on the trial shows that the William Kenefick Company was a principal in the building of this railway,

constructing it as is conceded with its own funds, and had the right within itself to place the location as in its judgment was wise, or if the bonus in fact went to the railroad company or to both, if all parties were fully apprised of it, and the same was, as is said by Judge Townsend, "an open transaction free from any corrupt purpose on the part of the stockholders, officers, or agents of said railroad company," then there is no reason why the contract made with it to secure the location of the road at Wagoner was not valid and enforceable. The line of distinction between the legal relations mentioned, whether it was a mere agent to build the road or was acting for itself, ought not to be difficult to draw; and in our judgment, in view of the fact that the execution and delivery of these contracts are admitted on the part of the defendant, and it is conceded that at a very great expense, approximately $50,000, the plaintiff has done that which the defendant induced it to do, and the defendant and those interested with him in thus securing the railroad have received and are enjoying that which they contracted for, the burden should clearly be placed upon him to establish by competent evidence, and not mere inference, the facts entitling him to succeed.

The decision of the lower court is accordingly reversed, the judgment set aside, and the case remanded to the district court of Muskogee county, with instructions to require the plaintiff to reply and proceed to trial.

All the Justices concur.